UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------x
ARTESNIAS HACIENDA REAL S.A. de C.V.,  :
                      Plaintiff       : Case No. ____-CV-_____
      -against-                        :
                                      : COMPLAINT
NORTH MILL CAPITAL LLC and         :
LEISAWITZ HELLER,                 : [This Complaint is related to
                   Defendants    : prior proceedings in 5:15-cv-
---------------------------------------------------------x 06350-EGS]

    Plaintiff Artesanias Hacienda Real S.A. de C.V. ("Artesanias" or "Creditor Artesanias", a company organized under the laws of Mexico), by way of its Complaint against defendant North Mill Capital LLC ("North Mill", a company organized under laws of the State of Delaware) and defendant Leisawitz Heller ("Leisawitz Heller"), a law firm organized and operating under laws of the State of Pennsylvania, alleges as follows:

### NATURE OF THE ACTION AND REQUESTED RELIEF

    1. This action by plaintiff Creditor Artesanias arises from and relates to a scheme of misconduct knowingly and intentionally arranged, joined, and participated in by defendants North Mill and Leisawitz Heller with debtor Ivan Jeffery ("Jeffery"), then the sole director, officer and controlling person of insolvent debtor Wilton Armetale, Inc. ("Wilton"), to secretly and improperly divert assets, and delay and prejudice Artesanias' ability to enforce and collect obligations and this Court's Judgment due, from Wilton.

    2. Plaintiff Creditor Artesanias on November 27, 2015 filed for and in April 2016 obtained in *Artesanias Hacienda Real S.A. de C.V. v. Wilton Armetale, Inc. and Ivan Jeffery*, CV No. 15-06350-EGS (the "Predecessor Action"), judgments for more than $920,000 against debtor Wilton for wares Artesanias produced and delivered to Wilton

1

but for which Wilton failed to pay Artesanias, and against Jeffery for Jeffery's failure to honor his written, notarized, unconditional guaranty of Wilton's obligations to Artesanias.

3. On April 7, 2016, plaintiff judgment Creditor Artesanias filed and recorded with the Lancaster County Prothonotary this Court's April 6, 2016 Order and judgment in Artesanias' favor in the Predecessor Action, and so recorded and holds a judgment lien on judgment debtor Wilton's valuable real estate located at 903-905 Square Street, Mt. Joy, Pennsylvania (the "Mt. Joy Real Estate"), which had been appraised in March 2015 and was re-confirmed in December 2015 as having an "as is" fair market value of $895,000. [Exhibit 1 hereto is that Order and judgment as filed with and recorded by the Lancaster County Prothonotary against, and Exhibit 3 hereto is the March 2015 appraisal and December 2015 email reconfirming $895,000 appraised value of, that Real Estate.]

4. During post-judgment discovery in the Predecessor Action, Creditor Artesanias has discovered documents and other facts as to a series of interrelated, previously secret, conflicts of interest of, and related scheme of misconduct against Artesanias by, Jeffery and his co-conspirators North Mill and Leisawitz Heller giving rise to this Complaint.[1]

5. This Complaint arises with respect to the scheme perpetrated by Jeffery (then sole director, officer and controlling person of insolvent corporation Wilton), Leisawitz Heller (then counsel for insolvent corporation Wilton and for Jeffery but which billed and was paid by North Mill), and North Mill, in which they knowingly and intentionally arranged and joined in and sought to profit from Jeffery's breach of fiduciary and other duties owed to Wilton and Artesanias. As described below and in exhibits hereto:

---

[1] The documents bearing a "LH" Bates stamp were produced by Leisawitz Heller in discovery in the Predecessor Action and the documents bearing a "WILTON - NMC" Bates stamp were produced by North Mill in discovery in the Predecessor Action.

2

(i) Jeffery at all pertinent times was sole director, officer, and controlling person of and fiduciary to Wilton; because Wilton was insolvent by October 2015, Jeffery thereafter also owed fiduciary duties to Wilton's creditors, including Creditor Artesanias; Jeffery had a secret $250,000 participation interest in North Mill's outstanding loan to and payable by Wilton and proceeds thereof, secured by North Mill's security interest in Wilton's non-real estate assets (such as inventory, receivables, trademarks, trade names and other property) and also by Wilton's Mt. Joy Real Estate; and in order to obtain fiduciary Jeffery's consent to a North Mill-arranged private sale of Wilton's non-real estate assets for "significantly less than" reasonably equivalent value and stripping Wilton of funds to maintain or protect its valuable Mt. Joy Real Estate, Jeffery demanded of North Mill and North Mill agreed that Jeffery be bribed with and retain a secret 20% participation interest in proceeds of resale by North Mill of Wilton's Mt. Joy Real Estate;

(ii) Leisawitz Heller, on the one hand, was counsel to insolvent corporation Wilton and so owed duties to Wilton and to its creditors, such as Artesanias, whilst, on the other hand, was counsel to Jeffery in his scheme to benefit from his secret participation interest in the North Mill loan and proceeds of Wilton valuable Mt. Joy Real Estate in consideration for agreeing to the North Mill-arranged private sale of Wilton's non-real estate assets for "significantly less than" reasonably equivalent value, and leaving Wilton no funds with which to protect or maintain Wilton's Mt. Joy Real Estate. During Leisawitz Heller negotiations as purported counsel for Wilton with respect to that private sale of all Wilton's non-real estate assets, Leisawitz Heller sent a March 2, 2016 email admitting fiduciary Jeffery and Leisawitz Heller knew the North Mill arranged private sale of Wilton's non-real estate assets was for "significantly less than" reasonably

equivalent value and that fiduciary Jeffery would thus block that sale of Wilton's non-real estate assets unless Jeffery retained his secret participation with North Mill in proceeds of sale of Wilton's Mt. Joy Real Estate, as follows [see Exhibit 22 hereto]:

> "The concept that I discussed with North Mill was **that in exchange for the Junior Participant and owner's consent** [the consent of Junior Participant and director, officer, and controlling shareholder Jeffery] **to allow the assets to be sold to Gordon Bros. for the price of $725,0000 (which amount Mr. Jeffery believes is significantly less than what the collection of the AR's and sale of inventory would bring)**, there had to be some upside for the Junior Participant [Jeffery]. .... the remaining proceeds [from sale of the Wilton real estate] would be paid 80% to NM and 20% to the Junior Participant [Jeffery].
> ...If North Mill insists on changing the deal, then the Borrower [Wilton] will not consent to the Gordon Brothers transaction." [emphasis added]

After North Mill conceded to Jeffery's retention of a 20% participation interest in proceeds of sale of Wilton's Mt. Joy Real Estate, Jeffery and Leisawitz Heller then assisted North Mill in arranging that private sale of Wilton's non-real estate assets to liquidator Gordon Brothers for "significantly less than" reasonably equivalent value and to application of all sale proceeds to pay Wilton debt to North Mill; so left Wilton without funds to maintain or protect its valuable Mt. Joy Real Estate; and colluded with North Mill in not opposing North Mill's confession of inflated judgment on that valuable Real Estate in order to facilitate North Mill's application for execution and sheriff's sale at which Wilton would bid its inflated confessed judgment to acquire that Real Estate and then resell that Real Estate and share proceeds with Jeffery [Exhibits 25-32 hereto].

    Meanwhile, Leisawitz Hellerwas billed and was paid by North Mill for Leisawitz Heller's services (a) as Jeffery's counsel in negotiating and arranging entry into the amended participation agreement in which Jeffery secretly retained a participation interest in net proceeds from North Mill's foreclosure by sheriff sale on and resale of the

4

valuable Mt. Joy Real Estate and (b) as debtor Wilton's counsel in arranging that private sale of Wilton's non-real estate assets at "significantly less than" reasonably equivalent value; payment of all sale proceeds to North Mill; stripping Wilton of all funds with which to maintain and protect its interest in the valuable Mt. Joy Real Estate; accepting service of North Mill's confession of judgment complaint against Wilton; and cooperating on behalf of Wilton and Jeffery in expediting North Mill's foreclosure process on the Mt. Joy Real Estate [Exhibits 22 & 25-32 hereto].

(iii) North Mill -- in order to induce Jeffery and Leisawitz Heller to not oppose the arrangements by which the Wilton assets were being sold at private sale for "significantly less than" reasonably equivalent value and all sale proceeds paid to North Mill Capital, and Wilton stripped of funds to maintain and protect its Mt. Joy Real Estate -- agreed Jeffery could retain participation in net proceeds of foreclosure on and resale of the valuable Mt. Joy Real Estate; then confessed judgment against Wilton's Mt. Joy Real Estate in an inflated amount to which Jeffery and Leisawitz Heller agreed they would not object (as Jeffery held a secret participation interest in North Mill resale of that Real Estate); and on the basis of that inflated confession of judgment, seeks to execute and foreclose by bidding its inflated confessed judgment at a sheriff's sale and then reselling the Real Estate for the Real Estate's greater fair market value (the Real Estate was appraised at North Mill's request as having an "as is" fair market value of $875,000), whereupon Jeffery would benefit through Jeffery's secret participation in 20% of net proceeds of resale of that Real Estate[ Exhibits 22 & 25-32 hereto]; and

(iv) neither Jeffery, Leisawitz Heller, nor North Mill disclosed their secret scheme and related conflicts of interest in the actions and proceedings in which North Mill

confessed judgment and has been seeking execution on and a sheriff's sale of the Mt. Joy Real Estate, as they instead seek to prevent Creditor Artesanias from obtaining the benefit of its judgment lien for more than $920,000 against Wilton and the Mt. Joy Real Estate.

6. In this action, plaintiff Artesanias seeks (among other things):

(a) compensatory money damages, pre-and post-judgment interest, legal fees and punitive damages against defendants North Mill and Leisawitz Heller, jointly and severally;

(b) striking and vacating the confession of judgment which North Mill filed against Wilton's valuable Mt. Joy Real Estate with the consent and connivance of Wilton's then fiduciary Jeffery and Wilton/Jeffery's then counsel Leisawitz Heller;

(c) vacating, invalidating or subordinating purported liens and encumbrances which North Mill has filed and recorded against the Mt. Joy Real Estate;

(d) stay, dismissal, and vacating of the execution and sheriff's sale which North Mill has filed against and sought to have with respect to the Mt. Joy Real Estate; and

(e) for such other and further relief as may be appropriate in the circumstances.

## THE PARTIES.

7. Plaintiff Creditor Artesanias is a company organized and doing business in Mexico; has an address of Ave. Industria Del Agave 166, Zapopan, Jalisco, Mexico; in response to purchase orders received from Wilton, produced and arranged delivery of merchandise inventory to Wilton's distribution facility in Berks County, Pennsylvania; in light of Wilton's failure to pay for that inventory, filed for and obtained from this Court in the Predecessor Action an Order and judgment entered April 6, 2016 with pre-judgment interest in the total amount of $920,645.38 plus interest; and then filed and recorded that

6

judgment on April 7, 2016 with the Prothonotary of Lancaster County in which the Mt. Joy Real Estate is located [Exhibit 1 hereto is that judgment as filed with the Lancaster County Prothonotary]. None of that Judgment has been paid.

8. Plaintiff Creditor Artesanias also filed for and obtained in the Predecessor Action an Order and judgment against Jeffery entered April 29, 2016 with pre-judgment interest in the total amount of $923,457.87, and then filed and recorded that judgment on May 2, 2016 with the Lancaster County Prothonotary and also with the Berks County Prothonotary and in other jurisdictions [Exhibit 2 hereto is a copy of that judgment as filed with the Lancaster County Prothonotrary]. That Judgment against Jeffery arises from and reflects Jeffery's breach of his written, notarized, unconditional personal guaranty of Wilton's obligations to Artesanias. None of that Judgment has been paid.

9. Defendant North Mill Capital LLC is a company organized in the State of Delaware, having a principal address of 821 Alexander Road, Suite 130, Princeton, New Jersey 08540. As of April 20, 2015 North Mill entered into a loan and related security agreements with Wilton and concurrently entered into a secret Participation Agreement with Jeffery in which Jeffery (then sole director, officer and controlling person of Wilton) was granted a $250,000 participation in North Mill's secured loans to Wilton and through which Jeffery received a share of interest and proceeds North Mill collected from Wilton [Exhibits 4 & 5 hereto].

10. Defendant Leisawitz Heller is a law firm organized and located in Pennsylvania, having offices at 1755 Century Boulevard, Wyomissing, Pennsylvania 19610. At all pertinent periods during 2015 and part of 2016, Leisawitz Heller served as counsel for Wilton and Jeffery; thereafter Leisawitz Heller continued to serve as counsel

for Jeffery; but, for various legal services rendered by Leisawitz Heller for Wilton and/or Jeffery (including without limitation the amended participation agreement in which Jeffery secretly retained a 20% interest in North Mill's resale of Wilton's Mt. Joy Real Estate), Leisawitz Heller billed and was paid by North Mill [Exhibit 28 hereto].

### JURISDICTION AND VENUE.

11. This action arises out of, relates to, and involves knowing and intentional participation in breaches of fiduciary duties owed to and other misconduct against Pennsylvania corporation Wilton and its Creditor Artesanias; arrangements improperly made and actions improperly taken in Pennsylvania with respect to security interests, and sale of inventory, receivables, trademarks, trade names, real estate and other property located, in Pennsylvania; and contracts negotiated in Pennsylvania in which the parties expressly agreed their obligations were and are governed by Pennsylvania law.

12. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds the sum of $75,000 (U.S.), exclusive of interest and costs, and is between citizens of a State (defendants North Mill and Leisawitz Heller) and citizens or subjects of a foreign state (plaintiff Artesanias, a Mexican company).

13. Venue in this action in this District is proper pursuant to 28 U.S.C. §1391, because (among other things) Wilton and its property at issue were located in this District; a substantial part of the transactions and other misconduct, and thus of the events or omissions which are the subject of and give rise to this Complaint, occurred at 1755 Century Boulevard in Wyomissing, Pennsylvania and other locations in this District; the parties agreed in the Loan and Security Agreement that all actions or proceedings in connection with the loan documents may be tried in the federal courts whose venue

includes Commonwealth of Pennsylvania, and defendants by their misconduct improperly sought to delay and defeat the matters pending, and the judgments issued in this District in the Predecessor Action.

## FACTUAL BACKGROUND.

14. Prior to and during 2015, Wilton conducted business in and through a leased warehouse, located in Landisville, Berks County, Pennsylvania, at which it received, stored and processed inventory purchased from Creditor Artesanias, and from which Wilton then distributed that inventory to Macy's, Bed Bath & Beyond, Belk, and other customers. Wilton's administrative headquarters was located in its Mt. Joy Real Estate.

15. Prior to April 2015, North Mill contemplated providing loans to Wilton to refinance an existing mortgage and other credit facilities for Wilton's business. Before providing that refinancing North Mill obtained a Phase I environmental report confirming that Wilton's Mt. Joy Real Estate did not have environmental problems and also a March 2015 appraisal which found the "as is" fair market value of the Mt. Joy Real Estate was $895,000. Later in December 2015, the appraiser and a real estate broker confirmed to North Mill the "as is" fair market value of the Mt. Joy Real Estate was still at least $895,000. [Exhibit 3 hereto is pertinent pages of that March 2015 Appraisal addressed to North Mill and a December 18, 2015 memorandum of North Mill as to confirmation of that $859,000 value of Wilton's Mt. Joy Real Estate].

16. During April 2015, North Mill entered into a Loan and Security Agreement with Wilton dated as of April 20, 2015 pursuant to which North Mill received a mortgage for $400,000 secured by the Mt. Joy Real Estate and a line of credit to Wilton also

9

secured by receivables, inventory, trademarks, trade names and other assets of Wilton. [Exhibit 5 hereto is a copy of that Loan Agreement dated as of April 20, 2015].

17. Pursuant to the Loan and Security Agreement dated as of April 20, 2015 and related documents, funds collected by Wilton were directed to a lockbox account for North Mill so that North Mill would and did have effective control of Wilton's funds.

18. In connection with and as part of that April 2015 refinancing, North Mill and Jeffery also entered into a secret Participation Agreement pursuant to which Jeffery received a $250,000 participation in the loan obligations owed by Wilton to North Mill [Exhibit 4 hereto is a copy of that April 2015 Participation Agreement and Participation Certificate as to Jeffery's $250,000 participation interest in the financing transactions made by North Mill to Wilton].

19. During the approximately eight-month period from the April 20, 2015 refinancing provided by North Mill (in which Jeffery had a $250,000 participation interest), North Mill charged and required Wilton to pay interest charges substantially above prevailing interest rates, overdraft fees, forbearance fees, default fees, appraisal fees, examination fees, legal fees, and other fees and thereby caused Wilton to incur loan-related charges of at least approximately $300,000 (including, among other things, a $75,000 overdraft charge) on North Mill's outstanding loans averaging only approximately $1,500,000 [Exhibits 6 & 10 hereto].

20. Pursuant to the secret Participation Agreement [Exhibit 4 hereto], North Mill was required to and did secretly pay Jeffery (Wilton's director, officer and controlling person) a ratable share of interest and proceeds North Mill collected from Wilton.

21. North Mill's receipt and effective control of Wilton's funds, together with North Mill's excessive fees and charges draining Wilton of funds necessary to operate Wilton's business, and North Mill's refusal to release funds to timely pay Artesanias and other suppliers, eventually resulted in refusal of Artesanias and other suppliers to provide inventory to Wilton on credit, thereby leaving Wilton without merchandise to sell, discouraging retailers from purchasing goods from Wilton, and so exacerbating Wilton's cash-flow problems.

22. Because North Mill, through its effective control of Wilton's funds, did not release funds sufficient to pay Artesanias in accordance with its supply agreement and Wilton invoices, Artesanias was not paid for more than $900,000 of wares it had provided to Wilton, thereby leading to Artesanias' November 27, 2015 filing in this Court of, and resulting in the more than $920,000 April 2016 judgments which Artesanias obtained from this Court against Wilton in, the Predecessor Action [Exhibit 1 hereto].

23. In light of North Mill-required charges of approximately $300,000 in an approximately eight month period against, control of, and stranglehold on the funds required for Wilton's business, Wilton was rendered insolvent.

24. By September 29, 2015, North Mill's staff recognized Wilton's liabilities (including its liabilities of approximately $900,000 to Creditor Artesanias) exceeded Wilton's assets; knew Wilton was unable to pay its suppliers and other bills as and when due; recognized Wilton was insolvent; and insisted that Wilton either sell its business or be liquidated.

25. By September 29, 2015, Leisawitz Heller knew that Wilton was "experiencing severe financial difficulties" and "in the process of drafting a controlled liquidation plan"

for North Mill as Wilton was unable to pay indebtedness owed and was insolvent [Exhibit 7 hereto, Leisawitz Heller's September 29, 2015 letter].

26. Upon a Pennsylvania corporation (such as Wilton) becoming and so long as the corporation remains insolvent, the fiduciary duties of the insolvent corporation's directors, officers, and controlling shareholders (including, among other things, their duties of care and loyalty) extend to creditors of the corporation.  See, for instance, *Committee of Unsecured Creditors v. Baldwin (In re Lemington Home for Aged)*, 659 F.3d 282, 290 (3rd Cir. 2011) (citing *Citicorp Venture Capital Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 987-88 (3rd Cir. 1988)); *Voest-Alpine Trading USA v. Vantage Steel Corp.*, 919 F.2d 206, 217 n.25 (3rd Cir. 1990); *In re Total Containment, Inc.*, 335 B.R. 589, 604-605 (Bkrtcy Ed. D. Pa. 2005).  Thus, upon Wilton having become insolvent, the fiduciary duties of Jeffery as director, officer, and controlling person of Wilton (including, among other things, his duties of care and loyalty) extended to Wilton's principal creditor Artesanias.

<u>The Forced March 7, 2016 Private Sale of Wilton's Non-Real Estate Assets to Liquidator Gordon Brothers.</u>

27. As required by North Mill, Wilton by January 2016 had prepared and was circulating a Confidential Information Memorandum to prospective purchasers of its business; had received expressions of interest from Vagabond House in acquiring Wilton's assets for $1,250,000 to $1,300,000; was also pursuing expressions of interest from USA Pan and others; and anticipated generating proceeds of more than $1,250,000 from such sale of Wilton's business (other than Wilton's Mt. Joy Real Estate) [Exhibits 14-15 hereto].

28. Notwithstanding Wilton's efforts to sell and the expressions of interest of Vagabond House, USA Pan and others in purchasing Wilton's business, North Mill's Executive Vice President Betty Hernandez on February 8, 2016 contacted Gordon Brothers, a liquidator based in Boston Massachusetts, to solicit Gordon Brother's interest in liquidating Wilton's non-real estate assets; North Mill received and then forwarded to Wilton a February 12, 2016 letter addressed to North Mill from Gordon Brothers expressing interest in a private liquidation sale in which Gordon Brothers would purchase all Wilton's non-real estate assets for only "between $700,000 and $750,000" [see the February 2016 emails which are Exhibit 16 hereto]; and North Mill thereafter insisted on and pressured Wilton to agree to a private sale of Wilton's non-real estate assets (including, among other things, receivables, inventory, trademarks and trade names) to liquidator Gordon Brothers and payment of all the sale proceeds to North Mill.

29. Wilton, Jeffery, and Leisawitz Heller recognized that Gordon Brothers offer "undervalues" (among other things) the Wilton intellectual property and brand. Thus, responding to that Gordon Brother's February 12, 2016 offer to purchase all Wilton non-real estate assets (including among other things Wilton intellectual property and brand name), Leisawitz Heller sent a February 17, 2016 email to North Mill [Exhibit 17 hereto] stating that, as a result of a discussion between Leisawitz Heller and Gordon Brothers, Gordon Brothers:

> "understands Wilton's request for a higher price needed for all of the assets. I told him [Gordon Brothers] the offer undervalues the IP and brand. He seems very interested in capturing all of the IP and brand."

30. North Mill continued to ignore that Gordon Brother's offer significantly undervalued (among other things) Wilton's valuable intellectual property and brand;

instead insisted on and pressured Wilton into a March 7, 2016 private sale of Wilton's assets (other than its Mt. Joy Real Estate) to liquidator Gordon Brothers for $725,000; required all that $725,000 be paid by liquidator Gordon Brothers directly to North Mill [see the Asset Purchase Agreement, wire transfer confirmation, and other documents which are Exhibits 24 & 27 hereto]; and stripped Wilton of all funds in its bank accounts, thereby rendering Wilton unable to pay any of the costs and expenses to maintain and protect its valuable Mt. Joy Real Estate.

31. Although plaintiff Creditor Artesanias has conducted discovery of North Mill and Leisawitz Heller with respect to that March 2016 private sale of Wilton's non-real estate assets, Artesanias has not received production of any document or other evidence that any liquidator other than Gordon Brothers was solicited by North Mill to bid on the Wilton assets being sold at private sale or that anyone was solicited after February 12, 2016 to provide a higher bid for those Wilton assets (whether inventory, receivables, trademarks, trade names or otherwise).

32. Prior to final negotiations for that private sale of Wilton's non-real estate assets to Gordon Brothers, North Mill sent a February 24, 2016 email to the Leisawitz Heller law firm stating that North Mill would pay $20,000 of legal fees which Wilton then owed to Leisawitz Heller (counsel for Wilton and Jeffery), but only if it was agreed that private sale to Gordon Brothers would proceed for that $725,000 amount payable to North Mill [Exhibit 19 hereto]. Leisawitz Heller and Jeffery confirmed their agreement to that email, whereupon North Mill paid that $20,000 for Leisawitz Heller.

33. During negotiations for Wilton's private sale of its non-real estate assets to liquidator Gordon Brothers, North Mill initially sought to reduce or eliminate the

14

participation interest which North Mill had previously granted Jeffery in proceeds of the eventual sale of Wilton's Mt. Joy Real Estate [see Exhibit 21 hereto, a February 25, 2016 email reflecting North Mill efforts to reduce fiduciary Jeffery's participation interest in proceeds of sale of the Mt. Joy Real Estate.]

34. In response to North Mill's efforts to reduce Jeffery's participation interest in the Mt. Joy Real Estate, Jeffery (sole director, officer and controlling person of and thus fiduciary to insolvent corporation Wilton and its creditors) through Leisawitz Heller (counsel for both insolvent corporation Wilton and fiduciary Jeffery) responded to North Mill's attorney by a March 2, 2016 email [Exhibit 22 hereto] which:

   (a) admitted that the $725,000 sale price to liquidator Gordon Brothers for Wilton's inventory and receivables (before even taking into account the valuable Wilton trademarks and trade name) was "significantly less than what the collection of the accounts receivable and sale of inventory would bring";

   (b) stated that "in exchange for ... [fiduciary Jeffery's] consent to allow the assets to be sold for the price of $725,000", Jeffery insisted on retention for himself of "the upside" of his secret 20% participation interest in proceeds of sale of the Mt. Joy Real Estate; and

   (c) indicated fiduciary Jeffery would use his control of Wilton to block Wilton's consent to and thereby prevent private sale of Wilton's non-real estate assets to Gordon Brothers unless North Mill agreed to Jeffery's retention of a 20% participation interest in proceeds of sale of the Mt. Joy Real Estate.

In the words of that March 2, 2016 email from Leisawitz Heller (counsel for insolvent corporation Wilton and fiduciary Jeffery) to North Mill attorney Seitz [Ex. 22 hereto]:

15

> "The concept that I discussed with North Mill was **that in exchange for the Junior Participant and owner's consent** [the consent of Junior Participant and director, officer, and controlling shareholder Jeffery] **to allow the assets to be sold to Gordon Bros. for the price of $725,000 (which amount Mr. Jeffery believes is significantly less than what the collection of the AR's and sale of inventory would bring), there had to be some upside for** the Junior Participant [Jeffery]. .... the remaining proceeds [from sale of the Wilton real estate] would be paid 80% to NM and 20% to the Junior Participant [Jeffery].
> ...**If North Mill insists on changing the deal, then the Borrower [Wilton] will not consent to the Gordon Brothers transaction**." [emphasis added]

35. In order to induce fiduciary Jeffery to agree to the private sale for "significantly less than" reasonably equivalent value of Wilton's non-real estate assets and payment of all sale proceeds directly to North Mill and so stripping Wilton of all funds or other resources with which to protect or maintain the Mt. Joy Real Estate, North Mill did agree that Jeffery would retain a secret 20% interest in net proceeds from future resale by North Mill of the Mt. Joy Real Estate [see Exhibits 26 hereto, Amended Joint Participation Agreement as to the Mt. Joy Real Estate].

36. Jeffery (although fiduciary to insolvent corporation Wilton and its creditors) with the assistance of and as arranged by Leisawitz Heller (counsel for insolvent corporation Wilton and fiduciary Jeffery) so agreed with North Mill to the private sale to liquidator Gordon Brothers of insolvent corporation Wilton's non-real estate assets for "significantly less than" reasonably equivalent value, the payment of all sale proceeds by Gordon Brothers directly to North Mill, and the stripping from Wilton of any funds or other resources to protect or maintain the Mt. Joy Real Estate, all in return for Jeffery's secret retention of 20% interest in net proceeds from future North Mill resale of the Mt. Joy Real Estate [Exhibits 23 & 26 hereto].

37. A Memorandum prepared by North Mill estimated Jeffery would collect $134,000 from his participation interest in ultimate sale of the Mt. Joy Real Estate if that Real Estate was sold for only $715,000 [Exhibit18, February 17, 2016 North Mill email].

38. On March 8, 2016 (immediately after private sale to Gordon Brothers of Wilton's non-real estate assets in which North Mill received payment of the $725,000 and in accordance with Leisawitz Heller's prior agreement with North Mill), Leisawitz Heller sent an invoice to and seeking payment from North Mill for $10,500 for services rendered by Leisawitz Heller in connection with that private sale and for arranging retention by Jeffery of his secret 20% participation interest in net proceeds of North Mill resale of the Mt. Joy Real Estate, and on March 9, 2016 acknowledged receipt of that $10,500 payment from North Mill [Exhibits 19 & 28 hereto, including February 24 and March 8 and 9, 2016 emails exchanged between North Mill and Leisawitz Heller].

<u>Defendants' Efforts to Delay Entry of Creditor Artesanias' Judgments against Wilton in Order to Permit North Mill to (a) Confess an Inflated Judgment and (b) Pursue Execution on, Sheriff Sale against and Then Resale of that Mt. Joy Real Estate in Which Jeffery Had Been Granted by North Mill and Retains a Secret Participation Interest.</u>

<u>Artesanias November 27, 2015 Filing and Pursuit of Its Judgment for Book Entry on the Accounts due from Debtor Wilton as to Which Wilton, Jeffery and Their Counsel Asserted No Proper Defense.</u>

39. At all pertinent times during 2015 and 2016, North Mill was aware that Artesanias was a principal supplier of wares to Wilton and was owed by Wilton the overdue sum of approximately $900,000.

40. On November 27, 2016 plaintiff Artesanias commenced its Predecessor Action in this Court against Wilton including (among other things) a Third Cause of Action for "Account Stated" in the amount of $900,658.17 U.S. and also against Jeffery

17

for his written, notarized Guaranty Agreement in which he had unconditionally guaranteed timely payment of Wilton's obligations to Artesanias.

41. Wilton and Leisawitz Heller gave notice to North Mill, and North Mill was aware, of Artesanias' Predecessor Action as a result of notices sent by Leisawitz Heller to North Mill, including (among other things) a January 6, 2016 email [Exhibit 11 hereto].

42. Leisawitz Heller signed and filed for Wilton and Jeffery an Answer and other proceedings in the Predecessor Action in which Leisawitz Heller falsely denied that Wilton's own book accounts reflected the sum of $900,658.17 due Artesanias and thereby improperly delayed entry of judgment on the "Stated Account" cause of action to which Artesanias was entitled in the Predecessor Action.

After the North Mill Arranged Private Sale of Wilton's Assets, North Mill Filed an Improper Inflated Confession of Judgment and for Sheriff's Sale of Wilton's Mt. Joy Real Estate, and Leisawitz Heller Consented That "Both Wilton and Jeffery Will Cooperate to Expedite the Foreclosure Process".

43. Not until a March 4, 2016 email in the Predecessor Action did Leisawitz Heller admit that Wilton's books and records all along reflected accounts payable owed to Wilton of more than $900,658.17 as asserted in Artesanias' "Account Stated" cause of action in its November 27, 2015 Complaint in the Predecessor Action; but in a March 9, 2016 email, Leisawitz Heller continued to refuse to consent to entry of judgment in Artesanias' favor for that sum of $900,658.17, as Leisawitz Heller instead sought to further delay entry of judgment in favor of Artesanias against Wilton and continued to prefer, favor and benefit North Mill, which was secretly invoiced by Leisawitz Heller for and paying Leisawitz Heller's fees and which had agreed to retention of a secret 20% participation interest for Leisawitz Heller's client Jeffery in proceeds of resale of Wilton's Mt. Joy Real Estate.

44. Leisawitz Heller then sent a March 31, 2016 letter to North Mill [Exhibit 30 hereto] in which Leisawitz Heller wrote (among other things):

> "To confirm our telephone conversation of yesterday afternoon, we will no longer be defending any litigation instituted against Wilton. ... The following is a list of the current litigation:
>
> 1. <u>Artesanias Hacienda Real S.A. de C.V. v. Wilton Armetale, Inc. and Ivan Jeffery</u>, U.S. District Ct. E.D. Pa, Civil Action No. 15-6350. A Motion for Summary Judgment has been filed by the Plaintiff and no response to same has been filed by the Defendants. It is anticipated that a judgment against Wilton will be entered in the near future on the Motion in the amount of approximately $900,658.17."

45. During April 6, 2016 proceedings in the Predecessor Action, Leisawitz Heller appeared as counsel for Wilton and finally admitted to the Court that Wilton had no opposition to entry of judgment in that amount in favor of plaintiff Creditor Artesanias against debtor Wilton, whereupon the Court entered its April 6, 2016 Order and judgment in Artesanias' favor against Wilton for that $900,658.17 and pre-judgment interest thereon, and Artesanias filed and recorded that judgment with the Lancaster County Prothonotary on April 7, 2016 [see Exhibit 1 hereto].

46. Meanwhile, North Mill had prepared and on April 6, 2016 filed in Lancaster County a proceeding for confession of a judgment in the inflated amount of $606,361.48 in favor of North Mill against Wilton. Later on or after April 8, 2016 (and thus after Artesanias had already recorded its Predecessor Action judgment with the Lancaster County Prothonotary), North Mill filed for execution on and sheriff's sale of, and for appointment of a North Mill-designated receiver to manage, the Mt. Joy Real Estate.

47. At the time North Mill filed its inflated confession of judgment against and application for execution on the Mt. Joy Property, thereby seeking to acquire that Real Estate by bidding its inflated confessed judgment at sheriff's sale, Jeffery continued to be

19

sole director, officer, controlling person and fiduciary of insolvent corporation Wilton and so continued to owe fiduciary duties to Wilton and its creditors, such as Artesanias; Leisawitz Heller was still serving as counsel for and representing insolvent corporation Wilton (whose Mt. Joy Real Estate was the subject of the confession of that inflated North Mill judgment against Wilton and North Mill's proceedings for execution on and sheriff's sale of that Real Estate); and Leisawitz Heller was continuing to also serve as counsel for and to represent Jeffery, whom Leisawitz Heller had arranged to secretly retain a participation interest in proceeds of North Mill resale of the Mt. Joy Real Estate.

48. On or about May 3, 2016, North Mill requested that Leisawitz Heller, on behalf of Wilton, consent to North Mill's filing of the inflated confession of judgment and application for sheriff's sale of the Mt. Joy Real Estate; in response, Leisawitz Heller informed North Mill on Wilton's behalf, that Leisawitz Heller would accept service for Wilton of, and that Wilton would not oppose, North Mill's proceedings for the inflated confessed judgment or the sheriff's sale of the Mt. Joy Real Estatate (in which Jeffery retained his secret 20% participation interest); and Leisawitz Heller further informed North Mill that "both Wilton and Mr. Jeffery will cooperate to expedite the foreclosure process" with respect to Wilton's valuable Mt. Joy Real Estate (in which Jeffery secretly retained his 20% participation interest).  See Exhibit 31 hereto, the May 3, 2016 email of Leisawitz Heller to North Mill's counsel (Jack Seitz)], stating that Leisawitz Heller:

> "have been told that a confession of judgment complaint has been filed against Wilton (and possibly against Ivan Jeffery), that a writ of execution has been issued and that the real estate is scheduled for sheriff sale on September 28, 2016.
>
> I have no problem with any of this and as stated during our last conference call, both Wilton and Mr. Jeffery will cooperate to expedite the foreclosure process.