Neither I nor my clients have been served with any Confession of Judgment complaints or other pleadings.  I will accept service on behalf of Wilton and Mr. Jeffery.  Please send me copies of the Complaints, and an Acceptance of Service."

49.  Leisawitz Heller then sought to withhold and conceal documentary and other evidence of the conflicts of interest, other misconduct, and scheme in which it, Jeffery, and North Mill had engaged, by refusing for nearly two months to comply with a Subpoena which Artesanias had caused to be served by hand on May 26, 2016 for production of documents relating to Wilton.  In so refusing to comply with that Subpoena, Leisawitz Heller ignored that the Court's April 29, 2016 order in the Predecessor Action had required Jeffery to turn over to Artesanias' designee all shares of Wilton, whereupon Jeffery ceased to a shareholder of Wilton; the new shareholder had removed Jeffery as a director, and appointed a new director, for Wilton; the new director had removed Jeffery as an officer and from all other positions, and appointed new management, for Wilton; and the new President had instructed Leisawitz Heller in writing to produce, and had waived any attorney-client privilege with respect to production of, the subpoenaed documents.  Meanwhile, Leisawitz Heller continues to refuse to produce (among other things) subpoenaed documents as to statements of services rendered and billings by, and payments received for Leisawitz Heller with respect to services Leisawitz Heller purportedly rendered for Wilton and also documents as to transactions between Wilton and Jeffery affiliates.

50. Leisawitz Heller knowingly and intentionally acted adversely and contrary to and against the interest of Wilton and of Wilton creditor Artesanias, and both Jeffery and North Mill knew that Leisawitz Heller was knowingly and intentionally acting adversely and contrary to and against the interest of Wilton and Wilton creditor Artesanias, in

negotiating, arranging, joining and participating in the arrangements and agreements whereby (among other things):

(i) Wilton's non-real estate assets (including without limitation inventory, receivables, trademarks, trade names and other property) were sold in the private sale to Gordon Brothers for "significantly less than" reasonably equivalent value for those assets, all the proceeds of that sale were paid to North Mill, and Wilton was left without funds or other resources to protect and maintain its valuable Mt. Joy Real Estate;

(ii) in order to induce Jeffery to agree to and approve that private sale as Wilton's sole director, officer and controlling person, fiduciary Jeffery was secretly bribed with and received North Mill's amended participation agreement pursuant to which Jeffery secretly retained a participation interest in North Mill resale of the valuable Mt. Joy Real Estate (which had been appraised as having an "as is" fair market value of $895,000);

(iii) Leisawitz Heller and North Mill agreed Leisawitz Heller would bill and be paid, and Leisawitz Heller did bill and was paid, by North Mill for services purportedly rendered by Leisawitz Heller on behalf of Jeffery and Wilton in connection with the private sale, amended Jeffery participation agreement, and other aspects of their scheme;

(iv) Leisawitz Heller, while serving as counsel for Wilton and for Jeffery was requested by North Mill and then did in writing confirm to North Mill that Leisawitz Heller on behalf of Wilton would accept service of and not oppose North Mill's confession of the inflated judgment in North Mill's favor against Wilton, execution on and foreclosure of Wilton's valuable Mt. Joy Real Estate, and appointment of a receiver of the Mt. Joy Real Estate, and further stated to North Mill that "both Wilton and Mr. Jeffery will cooperate to expedite the foreclosure process" [see the Leisawitz Heller May

3 and 4, 2016 emails which are Exhibits 31 and 32 hereto], all as part of the scheme seeking to benefit North Mill and fiduciary Jeffery (who had retained a secret participation interest in North Mill proceeds from resale of the Mt. Joy Real Estate);

(v) neither Leisawitz Heller nor North Mill disclosed to the Court in which North Mill confessed judgment against Wilton, sought execution on and foreclosure of Wilton's valuable Mt. Joy Real Estate, and sought appointment of a receiver for the Mt. Joy Real Estate, any of the scheme in which Leisawitz Heller and North Mill had engaged in contravention of the interests of Wilton and creditor Artesanias, while Leisawitz Heller's client Jeffery (although a fiduciary to insolvent corporation Wilton and its creditors), secretly retained and sought to benefit from a participation interest in North Mill proceeds from resale of the Mt. Joy Real Estate; and

(vi) Leisawitz Heller sought to withhold and conceal evidence of and participation in the above-summarized scheme by delaying and refusing Leisawitz Heller compliance with Artesanias' May 26, 2016 document Subpoena in the instant action.

**FIRST CAUSE OF ACTION**
(Conspiracy to Breach Fiduciary Duties Owed Insolvent Corporation Wilton and Its Creditor Artesanias)
(Against Defendants Leisawitz Heller and North Mill)

51.  Plaintiff Creditor Artesanias repeats and realleges each and every allegation contained in paragraphs 1 through 50 as set forth at length herein.

52. Upon a Pennsylvania corporation (such as Wilton) becoming and so long as the corporation remains insolvent, the fiduciary duties of the insolvent corporation's directors, officers, and controlling shareholders (including, among other things, their duties of care and loyalty) extend to creditors of the corporation.  See, for instance, *Committee of Unsecured Creditors v. Baldwin (In re Lemington Home for Aged)*, 659

F.3d 282, 290 (3rd Cir. 2011) (citing *Citicorp Venture Capital Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 987-88 (3rd Cir. 1988)); *Voest-Alpine Trading USA v. Vantage Steel Corp.*, 919 F.2d  206, 217 n.25 (3rd Cir. 1990);  *In re Total Containment, Inc.*, 335 B.R. 589, 604-605 (Bkrtcy. Ct. Ed. D. Pa. 2005).

53.  Under Pennsylvania law, a creditor controlling or otherwise participating in liquidation of debtor's collateral is held to "act as the debtor's fiduciary and has a corresponding good faith duty to maximize the proceeds of the collateral's sale" for the benefit of debtor and all creditors.  See, for instance, *Solfanelli v. Corestates Bank N.A.*, 203 F.3d 197, 200 (3rd Cir. 2000), citing *U.S. ex rel Small Bus. Admin. v. Chatlin's Dept. Store*, 506 F.Supp. 108, 111 (E.D. Pa. 1980); *Academy Industries, Inc. v. PNC Bank, N.A.*, 2002 WL 1472342 at *12-13 (Pa. Com Pl. 2002).

54.  As North Mill's own papers confirm, Wilton had become insolvent by autumn 2015 and continued to be insolvent through the time of and after the March 7, 2016 private sale of Wilton's non-real estate assets to Gordon Brothers and the payment of the $725,000 proceeds of that sale to North Mill.

55.  At all pertinent times during 2015 and through the March 7, 2016 private sale of Wilton's assets to Gordon Brothers, both Leisawitz Heller and North Mill knew that Jeffery was sole director, officer, and controlling person of insolvent corporation Wilton; Jeffery was a fiduciary of and owed fiduciary duties of care and loyalty to Wilton and Wilton creditors (such as Creditor Artesanias); and Jeffery was required to act with fiduciary duties of care and loyalty to Wilton and Wilton creditors (such as Creditor Artesanias).