56. At all pertinent times during 2015 and through March 2016, Leisawitz Heller and North Mill knew that Jeffery had a conflict of interest in, on the one hand as fiduciary to Wilton and its creditors, properly negotiating for Wilton and its creditors the terms of sale of Wilton's non-real estate assets in transactions arranged by, and from which payment would be made entirely to and for benefit of, North Mill, and, on the other hand, desiring to preserve for himself personally a secret participation interest in proceeds of North Mill foreclosure on and resale of Wilton's valuable Mt. Joy Real Estate.

57. Leisawitz Heller and North Mill knew Jeffery was breaching and did breach his fiduciary duties to Wilton and Wilton's creditors when, during negotiations for private sale of Wilton's assets to Gordon Brothers and in response to North Mill's efforts to reduce Jeffery's participation interest in the Mt. Joy Real Estate, Jeffery through Leisawitz Heller (representing both Wilton and Jeffery) responded to North Mill's attorney by a March 2, 2016 email which (a) admitted the $725,000 sale price to liquidator Gordon Brothers for Wilton's inventory and receivables (before even taking into account the valuable Wilton trademarks and trade name) was "significantly less than what the collection of the accounts receivable and sale of inventory would bring"; (b) stated "in exchange for ... [Jeffery's] consent to allow the assets to be sold for the price of $725,000", Jeffery insisted on retaining for himself "the upside" of his 20% participation interest in proceeds of sale of the Mt. Joy Real Estate; and (c) indicated Jeffery (as Wilton's sole director, officer and controlling person) would use his control of Wilton to block Wilton's consent to and thereby prevent private sale of Wilton's non-real estate assets to Gordon Brothers unless North Mill agreed to Jeffery's retention of a 20%

participation interest in proceeds of sale of the Mt. Joy Real Estate. In the words of Leisawitz Heller's March 2, 2016 email to North Mill attorney Seitz [Ex. 22 hereto]:

> "The concept that I discussed with North Mill was **that in exchange for the Junior Participant and owner's consent** [the consent of Junior Participant and director, officer, and controlling shareholder Jeffery] **to allow the assets to be sold to Gordon Bros. for the price of $725,000 (which amount Mr. Jeffery believes is significantly less than what the collection of the AR's and sale of inventory would bring), there had to be some upside for** the Junior Participant [Jeffery]. .... the remaining proceeds [from sale of the Wilton real estate] would be paid 80% to NM and 20% to the Junior Participant [Jeffery].
> ...**If North Mill insists on changing the deal, then the Borrower [Wilton] will not consent to the Gordon Brothers transaction**." [emphasis added]

58. Leisawitz and North Mill acted with a common purpose with Jeffery (Wilton's then sole director, officer and controlling person) and each other in knowingly and intentionally joining and conspiring, and in knowingly and intentionally participating as co-conspirators, with Jeffery and each other in breach of fiduciary duties to Wilton and Creditor Artesanias, in arranging, implementing, proceeding with, and effectuating the private sale at "significantly less than" reasonably equivalent value of Wilton's non-real estate assets to Gordon Brothers (in which North Mill received the payment of $725,000 and for which Leisawitz Heller billed and was paid at least $10,500 fees by North Mill) and leaving Wilton with no funds or other resources to maintain or protect its valuable Mt. Joy Real Estate, as that sale was conditioned upon and effectuated on the basis of breach of fiduciary duties to Wilton and Creditor Artesanias, including (among other thing) secret entry into the Amended Participation Agreement pursuant to which Jeffery secretly retained a 20% participation interest in the net proceeds from future sale or other disposition by North Mill of the Mt. Joy Real Estate [see Exhibits 18-26 hereto (including

Exhibit 26, the Amended Joint Participation Agreement retained by Jeffery in the Mt. Joy Real Estate)].

59. Leisawitz Heller and North Mill further continued to act with a common purpose with fiduciary Jeffery (while Jeffery still held himself out and was being held out by Leisawitz Heller as sole director, officer and controlling person of insolvent corporation Wilton) and each other in knowingly and intentionally joining and conspiring, and in knowingly and intentionally participating as co-conspirators, with Jeffery and each other in their conspiracy for breach of fiduciary duties to insolvent corporation Wilton and Creditor Artesanias in North Mill's solicitation, and Leisawitz Heller's written acknowledgement of, Jeffery's agreement on behalf of Wilton, that Wilton would not oppose North Mill's confession of the inflated judgment against Wilton and the Mt. Joy Real Estate and would not oppose North Mill's execution on and proceedings for sheriff's sale of Wilton's Mt. Joy Real Estate, so that North Mill might acquire the Mt. Joy Real Estate cheaply by bidding its inflated confessed judgment and then resell the Mt. Joy Real Estate at a higher price from which Jeffery. through his secret participation interest, would receive 20% of net proceeds.

60. Jeffery, Leisawitz Heller and North Mill so acted and participated with a common intent and purpose in connection with and as part of breach of fiduciary duties by Jeffery (Wilton's then sole director, officer and controlling person) and each other to insolvent corporation Wilton and Creditor Artesanias in seeking to injure Wilton and Creditor Artesanias by (among other things) effectuating the private sale of Wilton's non-real estate assets at "significantly less than" reasonably equivalent value in consideration for secret execution of the amended participation agreement between North Mill and

Jeffery in which Jeffery retained an interest in 20% of net proceeds from North Mill re-sale of the Mt. Joy Real Estate; in consenting to and not opposing confession by North Mill of an inflated judgment and imposition of a judgment lien against the Mt. Joy Real Estate; and in consenting to and not opposing the North Mill proceedings for execution on and sheriff's sale of the Mt. Joy Real Estate so that North Mill could bid its inflated judgment against and acquire that Mt. Joy Real Estate at a cheap price and then resell that Mt. Joy Real Estate at a greater price from which Jeffery would receive 20% of the net proceeds; and leaving no assets against which plaintiff Creditor Artesanias could enforce its Predecessor Action judgment against Wilton and Artesanias' judgment lien recorded with the Lancaster County Prothonotary.

61. As a direct and proximate result of the conspiracy of Leisawitz Heller and North Mill with Jeffery and each other for breach of fiduciary duties to Creditor Artesanias, Artesanias has suffered damages in the amount and is entitled to an award of at least $920,645.38 (the judgment entered on April 6, 2016 and interest thereon entered by this Court in the Predecessor Action as filed with and recorded by the Lancaster County Prothonotary), pre-and post-judgment interest thereon and costs of suit, legal fees and other fees and costs incurred.

62. North Mill and Leisawitz Heller engaged in outrageous conduct against Wilton and against Creditor Artesanias in North Mill's and Leisawitz Heller's knowing and intentional arranging, negotiation, effectuation, participation in, and benefit from the breaches of fiduciary duty by Jeffery (Wilton's sole director, officer and controlling person) in the private sale of Wilton's non-real estate assets to Gordon Brothers for "significantly less than" reasonably equivalent value and in depriving Wilton of all funds

28

to maintain and protect its valuable Mt. Joy Real Estate, all in consideration for fiduciary Jeffery's concurrent receipt of a secret amended participation agreement with North Mill wherein Jeffery retained the right to 20% of net proceeds from resale by North Mill of the Mt. Joy Real Estate and so on behalf of Wilton did not oppose North Mill's confession of an inflated judgment against and execution on and sheriff's sale of Wilton's valuable Mt. Joy Real Estate, and thereby knowingly and intentionally sought to deprive Artesanias of assets against which Artesanias could enforce its claims and judgment in the Predecessor Action.

63. As a result of that outrageous conduct and secret breaches of fiduciary duty by Jeffery which North Mill and Leisawitz Heller knowingly and intentionally arranged, negotiated, effectuated, participated in, and benefited from, and which North Mill and Leisawitz Heller knowingly and intentionally sought to conceal from Creditor Artesanias, Artesanias is entitled to punitive damages against North Mill and Leisawitz Heller, jointly and severally in the amount of not less than $950,000.

WHEREFORE, plaintiff Creditor Artesanias demands an order and judgment:

(i) against defendants North Mill and Leisawitz Heller, jointly and severally, for compensatory damages in the amount of $$920,645.38, plus pre and post-judgment interest thereon and costs of suit, attorney's fees and other fees and costs incurred;

(ii) against defendants North Mill and Leisawitz Heller, jointly and severally, for punitive damages in at least the amount of $950,000;

(iii) striking and vacating the confession of judgment which North Mill filed against Wilton's valuable Mt. Joy Real Estate;

(iv) declaring the purported liens and encumbrances which North Mill has filed and recorded against Mt. Joy Real Estate to be either vacated, invalid or subordinate to the judgment lien recorded on April 7, 2016 by Artesanias with the Prothonotary of Lancaster County [see Exhibit 1 hereto];

(v) staying, dismissing and vacating the execution and sheriff's sale which North Mill has filed against and sought to have with respect to the Mt. Joy Real Estate; and

(vi) for such other and further relief may be appropriate in the circumstances.

### SECOND CAUSE OF ACTION
(Fraudulent Conveyance)
(Against Defendants Leisawitz Heller and North Mill)

64. Plaintiff Creditor Artesanias repeats and realleges each and every allegation contained in paragraphs 1 through 63 as set forth at length herein.

65. Creditor Artesanias' claim against Wilton and Jeffery arose prior to the November 2015 filing of its Complaint against and continued throughout the pendency of its Predecessor Action and was confirmed by entry of the ultimately unopposed entry of the Court's April 6, 2016 judgment in favor of Creditor Artesanias against debtor Wilton in the Predecessor Action [Exhibit 1 hereto].

66. Leisawitz Heller and North Mill were aware of Artesanias' claims in and Predecessor Action against Wilton and Jeffery at all pertinent times prior to and throughout the March 2016 private sale of Wilton's assets to Gordon Brothers.

67. Wilton had become insolvent prior to and continued to be insolvent through the time of and after the March 2016 private sale of its non-real estate assets to liquidator Gordon Brothers for $725,00 payable to North Mill, which the March 2, 2016 Leisawitz Heller email to North Mill's counsel admitted to be "significantly less than" the amount

30

collectible from and so "significantly less than" the realizably equivalent value of the non-real estate assets (including without limitation inventory, accounts receivable, trademarks and trade names).

68. At all pertinent times during 2015 and throughout the March 2016 private sale of Wilton assets to Gordon Brothers for which North Mill received $725,000 and Leisawitz Heller was paid fees by North Mill, both Leisawitz Heller and North Mill knew that Jeffery was sole shareholder, sole director, officer, and controlling person of insolvent corporation Wilton and thus a fiduciary and owing fiduciary duties to act with care and loyalty to Wilton and Wilton's creditors (such as plaintiff Creditor Artesanias).

69. Leisawitz Heller (which was representing both Wilton and Jeffery) sent a March 2, 2016 email to North Mill's counsel in which Leisawitz Heller (a) admitted the $725,000 sale price to liquidator Gordon Brothers for Wilton's inventory and receivables (before even taking into account the valuable Wilton trademarks and trade name) was "significantly less than what the collection of the accounts receivable and sale of inventory would bring"; (b) stated that "in exchange for ... [Jeffery's] consent to allow the assets to be sold for the price of $725,000", Jeffery insisted on retention for himself of "the upside" of his 20% participation interest in proceeds of sale of the Mt. Joy Real Estate; and (c) indicated Jeffery (as Wilton's sole shareholder, sole director, officer and controlling person) would use his control of Wilton to block Wilton's consent to and thereby prevent private sale of Wilton's non-real estate assets to Gordon Brothers unless North Mill agreed to Jeffery's retention of a 20% participation interest in proceeds of sale of the Mt. Joy Real Estate. In the words of that email [Exhibit 22 hereto]:

> "The concept that I discussed with North Mill was **that in exchange for the Junior Participant and owner's consent** [the consent of Junior Participant

and director, officer, and controlling shareholder Jeffery] **to allow the assets to be sold to Gordon Bros. for the price of $725,000 (which amount Mr. Jeffery believes is significantly less than what the collection of the AR's and sale of inventory would bring), there had to be some upside for** the Junior Participant [Jeffery]. .... the remaining proceeds [from sale of the Wilton real estate] would be paid 80% to NM and 20% to the Junior Participant [Jeffery].
...**If North Mill insists on changing the deal, then the Borrower [Wilton] will not consent to the Gordon Brothers transaction**." [emphasis added]

70. Leisawitz Heller and North Mill knew that the March 2016 private sale arranged by North Mill and Leisawitz Heller of Wilton's assets to Gordon Brothers was for "significantly less than" the amount collectible from or with respect to, and that Wilton did not receive a reasonably equivalent value in exchange for, the assets so sold to Gordon Brothers by Wilton and that, in consideration for Jeffery's consent to that transfer of Wilton assets for less than a reasonably equivalent value, Leisawitz Heller and North Mill had negotiated and arranged and bribed Jeffery with, and Jeffery and North Mill entered into an amended participation agreement in which Jeffery retained, a secret 20% participation interest in North Mill resale of the Mt. Joy Property.

71. In accordance with 12 Pa. C.S.A. §5105 and such other provisions of law as may be applicable, the transfer made by debtor Wilton of its non-real estate assets in the March 2016 private sale to Gordon Brothers and the payment of the proceeds of $725,000 of that sale to North Mill (from which North Mill in turn paid fees to Leisawitz Heller) was and is fraudulent as to Creditor Artesanias, as Artesanias' claim against debtor Wilton arose many months before the March 2016 private sale to Gordon Brothers was made; debtor Wilton did not receive reasonably equivalent value in exchange for the transfer of its non-real estate assets (including without limitation inventory, receivables, trademarks and trade names) in that private sale; debtor Wilton was insolvent at the time

of the March 2016 private sale and transfer and became more insolvent as a result of the March 2016 private sale and transfer of its non-real estate assets; and that to obtain Jeffery's agreement to terms so unfavorable to Wilton and its creditors, North Mill agreed to the secret amended participation agreement in which North Mill permitted Jeffery to retain a secret 20% interest in net proceeds of resale by North Mill of Wilton's valuable Mt. Joy Real Estate and North Mill also agreed to pay and did pay the fees of Leisawitz Heller (counsel for Wilton and for Jeffery).

72. North Mill and Leisawitz Heller engaged in outrageous conduct against Wilton and against Creditor Artesanias in North Mill's and Leisawitz Heller's knowing and intentional arranging, negotiation, effectuation, participation in, and benefit from the fraudulent private sale and transfer of Wilton's non-real estate assets to Gordon Brothers for "significantly less than" reasonably equivalent value for those assets in the transaction in which Wilton's fiduciary Jeffery (Wilton's sole shareholder, sole director, officer and controlling person), in consideration for his agreement to that sale of Wilton assets for less than reasonably equivalent value for those assets, was bribed with and concurrently received a secret amended participation agreement with North Mill wherein Jeffery retained the right to receive 20% of the net proceeds from resale by North Mill of the Mt. Joy Real Estate, and North Mill also agreed to pay and did pay the fees of Leisawitz Heller (counsel for Wilton and for Jeffery).

73. As a result of that outrageous conduct and fraudulent transfer which North Mill and Leisawitz Heller knowingly and intentionally arranged, negotiated, effectuated, participated in, and benefited from, Creditor Artesanias is entitled to punitive damages

against North Mill and Leisawitz Heller, jointly and severally. See, for instance, *Klein v. Weidner*, 729 F.3d 280, 296 (3rd Cir. 2013).

WHEREFORE, In accordance with 12 Pa. C.S.A. §§5107 and 5108 and such other provisions of law as may be applicable, plaintiff Creditor Artesanias demands an order and judgment:

(i) against defendants North Mill and Leisawitz Heller, jointly and severally, for compensatory damages in the amount of $920,645.38, plus pre and post-judgment interest thereon and costs of suit, attorney's fees and other fees and costs incurred;

(ii) against defendants North Mill and Leisawitz Heller, jointly and severally, for punitive damages in at least the amount of $950,000;

(iii) striking and vacating the confession of judgment which North Mill filed against Wilton's valuable Mt. Joy Real Estate;

(iv) declaring the purported liens and encumbrances which North Mill has filed and recorded against Mt. Joy Real Estate to be either vacated, invalid or subordinate to the judgment lien recorded on April 7, 2016 by Artesanias with the Prothonotary of Lancaster County [see Exhibit 1 hereto];

(v) staying, dismissing and vacating the execution and sheriff's sale which North Mill has filed against and sought to have with respect to the Mt. Joy Real Estate; and

(vi) for such other and further relief may be appropriate in the circumstances.

### THIRD CAUSE OF ACTION
(Conspiracy for Fraudulent Conveyance)
(Against Defendants Leisawitz Heller and North Mill)

74. Plaintiff Creditor Artesanias repeats and realleges each and every allegation contained in paragraphs 1 through 73 as set forth at length herein.