75. Creditor Artesanias' claim against Wilton arose prior to the November 2015 filing of its Complaint against and continued throughout pendency of its Predecessor Action and was ultimately confirmed by unopposed entry of the Court's April 6, 2016 judgment in Creditor Artesanias' favor against debtor Wilton in the Predecessor Action.

76. Leisawitz Heller and North Mill were aware of Artesanias' claims and its Predecessor Action at all pertinent times prior to and throughout the March 2016 private sale of Wilton's non-real estate assets to Gordon Brothers.

77. Wilton had become insolvent prior to and continued to be insolvent through the time of and after the March 2016 private sale to Gordon Brothers of Wilton's non-real estate assets for "significantly less than" reasonably equivalent value and the payment of the $725,000 proceeds of that sale to North Mill, leaving Wilton without funds to maintain or protect its valuable Mt. Joy Real Estate.

78. At all pertinent times during 2015 and throughout the March 2016 private sale of Wilton assets to Gordon Brothers for which North Mill received $725,000 and Leisawitz Heller billed its fees to and was paid its fees by North Mill, both Leisawitz Heller and North Mill knew that Jeffery was the sole shareholder, sole director, officer, and controlling person of insolvent corporation Wilton and thus a fiduciary and owing fiduciary duties to act with care and loyalty to Wilton and its creditors (such as plaintiff Creditor Artesanias).

79. Leisawitz Heller (which was representing both Wilton and Jeffery) sent a March 2, 2016 email to North Mill in which Leisawitz Heller (a) admitted that the $725,000 sale price to liquidator Gordon Brothers for Wilton's inventory and receivables (before even taking into account the valuable Wilton trademarks and trade name) was

"significantly less than what the collection of the accounts receivable and sale of inventory would bring"; (b) stated that "in exchange for ... [Jeffery's] consent to allow the assets to be sold for the price of $725,000", Jeffery insisted on retention for himself of "the upside" of his 20% participation interest in proceeds of sale of the Mt. Joy Real Estate; and (c) indicated Jeffery (as Wilton's sole shareholder, sole director, officer and controlling person) would use his control of Wilton to block Wilton's consent to and thereby prevent private sale of Wilton's non-real estate assets to Gordon Brothers unless North Mill agreed to Jeffery's retention of a 20% participation interest in proceeds of sale of the Mt. Joy Real Estate. In the words of that email [Exhibit 22 hereto]:

> "The concept that I discussed with North Mill was **that in exchange for the Junior Participant and owner's consent** [the consent of Junior Participant and director, officer, and controlling shareholder Jeffery] **to allow the assets to be sold to Gordon Bros. for the price of $725,000 (which amount Mr. Jeffery believes is significantly less than what the collection of the AR's and sale of inventory would bring), there had to be some upside for** the Junior Participant [Jeffery]. .... the remaining proceeds [from sale of the Wilton real estate] would be paid 80% to NM and 20% to the Junior Participant [Jeffery].
> ...**If North Mill insists on changing the deal, then the Borrower [Wilton] will not consent to the Gordon Brothers transaction**." [emphasis added]

80. Leisawitz Heller and North Mill knew that the March 2016 private sale arranged by North Mill and Leisawitz Heller of Wilton's non-real estate assets to Gordon Brothers was for "significantly less than" reasonably equivalent value of the assets transferred; thus that Wilton did not receive a reasonable equivalent value in exchange for the assets so transferred by Wilton; and that, in consideration for Jeffery's consent to that transfer of Wilton assets for less than a reasonably equivalent value, Leisawitz Heller and North Mill had negotiated and bribed Jeffery with, and Jeffery and North Mill entered into an amended participation agreement in which Jeffery retained, a secret 20%

participation interest in North Mill resale of the Mt. Joy Property and Leisawitz Heller's fees for Wilton and for Jeffery were paid by North Mill.

81. In accordance with 12 Pa. C.S.A. §5105 and such other provisions of law as may be applicable, the transfer of debtor Wilton's non-real estate assets in the March 2016 private sale to Gordon Brothers and the payment of all proceeds of $725,000 of that sale to North Mill (from which North Mill in turn paid fees to Leisawitz Heller) was and is fraudulent as to Creditor Artesanias, as Artesanias' claim against debtor Wilton arose and its Predecessor Action was filed many months before the March 2016 private sale to Gordon Brothers was made; debtor Wilton did not receive reasonably equivalent value in exchange for the transfer of its non-real estate assets in that private sale; and debtor Wilton was insolvent at the time of, and became more insolvent as a result of, the March 2016 below-market private sale and transfer of its non-real estate assets.

82. Leisawitz and North Mill acted with a common purpose with Jeffery (Wilton's sole shareholder, sole director, officer and controlling person) and each other in knowingly and intentionally joining and conspiring, and in knowingly and intentionally participating as co-conspirators, with Jeffery and each other in fraudulent transfer of Wilton's non-real estate assets in the March 2016 private sale to Gordon Brothers and the payment of the proceeds of $725,000 of that sale to North Mill (from which North Mill in turn paid fees to Leisawitz Heller), in which debtor Wilton did not receive reasonably equivalent value in exchange for the transfer of its non-real estate assets in that private sale, and debtor Wilton was insolvent at the time of, and became more insolvent as a result of, that March 2016 private sale and transfer of its non-real estate assets, and Leisawitz Heller fees to Wilton and to Jeffery were billed to and paid by North Mill.

83. Jeffery, Leisawitz Heller and North Mill so acted with a common purpose in connection with and as part of fraudulent transfer of Wilton's non-real estate assets and in intentionally seeking to so injure Wilton and Creditor Artesanias by (among other things) participating in and effectuating private sale of Wilton's non-real estate assets for "significantly less than" reasonably equivalent value in consideration for the bribe of the secret amended participation agreement between North Mill and Jeffery in which Jeffery retained an interest in 20% of net proceeds from North Mill re-sale of the Mt. Joy Real Estate; in consenting to and not opposing confession by North Mill of an inflated judgment and imposition of a judgment lien against the Mt. Joy Real Estate; and in consenting to and not opposing North Mill proceedings for execution on and sheriff's sale of the Mt. Joy Real Estate so that North Mill could bid its inflated judgment against and acquire that Mt. Joy Real Estate at a cheap price and then resell that Real Estate at a greater price from which Jeffery would receive 20% of the net proceeds; and thereby leaving no assets against which plaintiff Creditor Artesanias can enforce its judgment against Wilton in the Predecessor Action and its judgment lien recorded with the Lancaster County Prothonotary.

84. As a direct and proximate result of the conspiracy of Leisawitz Heller and North Mill with Jeffery and each other for breach of fiduciary duties and fraudulent transfer of Wilton's assets, Artesanias has suffered and is entitled to an award of damages in the amount of at least $920,645.38 (consisting of the judgment entered on April 6, 2016 and interest thereon entered by this Court in the Predecessor Action and filed with and recorded by Lancaster County Prothonotary), and also an award of pre-and post-judgment interest thereon and costs of suit, legal fees and other fees and costs incurred.

85. North Mill and Leisawitz Heller engaged in outrageous conduct against Wilton and against Creditor Artesanias in North Mill's and Leisawitz Heller's knowing and intentional arranging, negotiation, effectuation, participation in, and benefit from the fraudulent private sale and transfer of Wilton's non-real estate assets to Gordon Brothers for "significantly less than" reasonably equivalent value for those assets in the transactions in which fiduciary Jeffery (Wilton's sole shareholder, sole director, officer and controlling person), in consideration for his agreement to that sale of Wilton assets for less than reasonably equivalent value for those assets, was bribed with and concurrently received a secret amended participation agreement with North Mill wherein he retained the right to receive 20% of the net proceeds from resale by North Mill of the Mt. Joy Real Estate, and the fees of Leisawitz Heller to Wilton and to Jeffery were paid by North Mill.

86. As a result of that outrageous conduct and fraudulent transfer which North Mill and Leisawitz Heller knowingly and intentionally arranged, negotiated, effectuated, participated in, and benefited from, Creditor Artesanias is entitled to punitive damages against North Mill and Leisawitz Heller, jointly and severally. See, for instance, *Klein v. Weidner*, 729 F.3d 280, 296 (3rd Cir. 2013).

WHEREFORE, In accordance with 12 Pa. C.S.A. §§5107 and 5108 and such other provisions of law as may be applicable, plaintiff Creditor Artesanias demands an order and judgment:

(i) against defendants North Mill and Leisawitz Heller, jointly and severally, for compensatory damages in the amount of $920,645.38, plus pre and post-judgment interest thereon and costs of suit, attorney's fees and other fees and costs incurred;

(ii) against defendants North Mill and Leisawitz Heller, jointly and severally, for punitive damages in at least the amount of $950,000;

(iii) striking and vacating the confession of judgment which North Mill filed against Wilton's valuable Mt. Joy Real Estate;

(iv) declaring the purported liens and encumbrances which North Mill has filed and recorded against Mt. Joy Real Estate to be either vacated, invalid or subordinate to the judgment lien recorded on April 7, 2016 by Artesanias with the Prothonotary of Lancaster County [see Exhibit 1 hereto];

(v) staying, dismissing and vacating the execution and sheriff's sale which North Mill has filed against and sought to have with respect to the Mt. Joy Real Estate; and

(vi) for such other and further relief may be appropriate in the circumstances.

**FOURTH CAUSE OF ACTION**
(Conspiracy to Engage in Commercially Unreasonable Disposition of Debtor's Assets)
(Against Defendants Leisawitz Heller and North Mill)

87. Plaintiff Creditor Artesanias repeats and realleges each and every allegation contained in paragraphs 1 through 86 as set forth at length herein.

88. Upon Wilton's default in obligations owed secured party North Mill, every aspect of disposition of the North Mill collateral, including the method, manner, time, place and other terms, was required to be "commercially reasonable" as required by applicable law (including without limitation 13 Pa. C.S.A. §§9607 & 9610).

89. North Mill purports to have been a secured party as to the non-real estate assets which Wilton arranged to be sold in the March 2016 private sale to liquidator Gordon Brothers; prior to and at the time of that sale Wilton was in default of obligations

to North Mill; and disposition of Wilton assets by private sale to North Mill was intended to satisfy obligations of Wilton to North Mill.

90. North Mill and Leisawitz Heller negotiated, arranged, participated in and were beneficiaries of the March 2016 private sale by Wilton to Gordon Brothers of the non-real estate assets of Wilton for which Gordon Brothers paid directly to North Mill the purchase price of $725,000 [Exhibits 24 & 27 hereto], and Leisawitz Heller billed its fees directly to and was paid directly by North Mill [Exhibit 28 hereto].

91. At all pertinent times during 2015 and through the March 2016 private sale of Wilton's assets to Gordon Brothers, both Leisawitz Heller and North Mill knew that Jeffery was the sole director, officer, and controlling person of insolvent corporation Wilton; a fiduciary of and owing fiduciary duties of care and loyalty to Wilton and Wilton creditors (such as plaintiff Creditor Artesanias); and so required to act with care and loyalty to and for Wilton creditors (such as plaintiff Creditor Artesanias).

92. At all pertinent times during 2015 and through March 2016, Leisawitz Heller and North Mill knew Jeffery had a conflict of interest in, on the one hand, fulfilling his fiduciary obligations to negotiate and act with care and loyalty for debtor Wilton against North Mill, and, on the other hand, having a secret participation interest in North Mill's loan payable by and related collection rights against Wilton.

93. North Mill and Leisawitz Heller arranged for the March 2016 private sale of Wilton's non-real estate assets to be effected on terms "significantly less than" commercially reasonable to Wilton by instead arranging for fiduciary Jeffery (Wilton's sole director, officer and controlling person whose approval was required for that private sale) to agree to that sale by secretly bribing him with and providing for his concurrent

entry into an amended participation agreement with North Mill in which Jeffery retained for himself an at least 20% interest in net proceeds of North Mill's eventual sale of the Mt. Joy Real Estate.

94. Leisawitz Heller and North Mill knew Jeffery was breaching and did breach his fiduciary duties to Wilton and its creditors when, during negotiations for private sale of Wilton's assets to Gordon Brothers and in response to North Mill's efforts to reduce Jeffery's participation interest in the Mt. Joy Real Estate, Jeffery responded through Leisawitz Heller (who was representing both Wilton and Jeffery) by a March 2, 2016 email which (a) admitted the $725,000 sale price to liquidator Gordon Brothers for Wilton's inventory and receivables (before even taking into account the valuable Wilton trademarks and trade name) was "significantly less than what the collection of the accounts receivable and sale of inventory would bring"; (b) stated that "in exchange for ... [Jeffery's] consent to allow the assets to be sold for the price of $725,000", Jeffery insisted on retention for himself of "the upside" of his 20% participation interest in proceeds of sale of the Mt. Joy Real Estate; and (c) indicated Jeffery (Wilton's sole shareholder, sole director, officer and controlling person) would use his control of Wilton to block Wilton's consent to and so prevent private sale of Wilton's non-real estate assets to Gordon Brothers unless North Mill agreed to Jeffery's retention of a 20% participation interest in proceeds of sale of the Mt. Joy Real Estate. Per that email [Exhibit 22 hereto]:

> "The concept that I discussed with North Mill was **that in exchange for the Junior Participant and owner's consent** [the consent of Junior Participant and director, officer, and controlling shareholder Jeffery] **to allow the assets to be sold to Gordon Bros. for the price of $725,000 (which amount Mr. Jeffery believes is significantly less than what the collection of the AR's and sale of inventory would bring), there had to be some upside for** the Junior Participant [Jeffery]. .... the remaining proceeds [from sale of the Wilton real

estate] would be paid 80% to NM and 20% to the Junior Participant [Jeffery].
...**If North Mill insists on changing the deal, then the Borrower [Wilton] will not consent to the Gordon Brothers transaction**." [emphasis added]

95. Leisawitz and North Mill acted with a common purpose with Jeffery (Wilton's sole director, officer and controlling person) and each other in knowingly and intentionally joining and conspiring, and in knowingly and intentionally participating as co-conspirators, with Jeffery and each other, in breach of fiduciary and other duties to Wilton and Creditor Artesanias, in arranging, implementing, proceeding with, and effectuating the private sale at "significantly less than" commercially reasonable terms of Wilton's non-real estate assets to Gordon Brothers (in which North Mill received the payment of $725,000 and for which Leisawitz Heller billed and was paid at least $10,500 fees by North Mill), as that "significantly less than" commercially reasonable sale was conditioned and effectuated upon breach of fiduciary and other duties to Wilton and Creditor Artesanias, including (among other thing) secret entry with North Mill into the Amended Participation Agreement pursuant to which Jeffery was bribed with and secretly retained a 20% interest in the net proceeds from future sale or other disposition by North Mill of the Mt. Joy Real Estate [see Exhibits 18-26 hereto (including Exhibit 26, the Amended Joint Participation Agreement retained by Jeffery in the Mt. Joy Real Estate)].

96. Leisawitz Heller and North Mill further acted with a common purpose with fiduciary Jeffery (while Jeffery still held himself out and was being held out by Leisawitz Heller as sole shareholder, sole director, officer and controlling person of insolvent corporation Wilton) and each other in knowingly and intentionally joining and conspiring, and in knowingly and intentionally participating as co-conspirators, with

Jeffery and each other, in their continuing conspiracy for private sale of Wilton's non-real assets to Gordon Brothers on terms not commercially reasonable to Wilton and creditors, such as Creditor Artesanias.

97. Jeffery, Leisawitz Heller and North Mill so acted with a common purpose in connection with and as part of the breach of duties by Jeffery (Wilton's sole shareholder, director, officer and controlling person) and each other in intentionally seeking to injure Wilton and Creditor Artesanias by (among other things) so effectuating the private sale of Wilton's non-real estate assets for an amount and on terms not commercially reasonably in consideration for bribing Jeffery with and providing to Jeffery secret retention of a 20% interest in net proceeds from North Mill's re-sale of the Mt. Joy Real Estate; in consenting to and not opposing confession by North Mill of an inflated judgment and imposition of a judgment lien against the Mt. Joy Real Estate; and in consenting to and not opposing the North Mill proceedings for execution on and sheriff's sale of the Mt. Joy Real Estate so that North Mill could bid its inflated judgment against and acquire that Mt. Joy Real Estate at a cheap price and then resell that Mt. Joy Real Estate at a greater price from which Jeffery would receive 20% of the net proceeds; and thereby leaving no assets against which Creditor Artesanias can enforce its judgment in the Predecessor Action and its judgment lien recorded with the Prothonotary of Lancaster County.

98. As a direct and proximate result of the conspiracy of Leisawitz Heller and North Mill with Jeffery and each other for breach of duties, Artesanias has suffered damages in the amount of at least $920,645.38 (consisting of the judgment entered on April 6, 2016 and interest thereon entered by this Court in the Predecessor Action and filed with and recorded by the Prothonotary of Lancaster County). In addition to such

damages, Creditor Artesanias is also entitled to an award of pre-and post-judgment interest thereon and costs of suit, legal fees and other fees and costs incurred.

WHEREFORE, plaintiff Creditor Artesanias demands an order and judgment:

(i) against defendants North Mill and Leisawitz Heller, jointly and severally, for compensatory damages in the amount of $920,645.38, plus pre and post-judgment interest thereon and costs of suit, attorney's fees and other fees and costs incurred;

(ii) striking and vacating the confession of judgment which North Mill filed against Wilton's valuable Mt. Joy Real Estate;

(iii) declaring the purported liens and encumbrances which North Mill has filed and recorded against Mt. Joy Real Estate to be either vacated, invalid or subordinate to the judgment lien recorded on April 7, 2016 by Artesanias with the Prothonotary of Lancaster County [see Exhibit 1 hereto];

(iv) staying, dismissing and vacating execution on and sheriff's sale which North Mill has filed against and sought to have with respect to the Mt. Joy Real Estate; and

(v) for such other and further relief may be appropriate in the circumstances.

Dated: August 2, 2016
Allentown, Pennsylvania

/s/ Barry L. Goldin
BARRY L. GOLDIN, ESQ. (PA #58692)
*Attorney for Plaintiff Artesanias Hacienda Real, S.A. de C.V.*
3744 Barrington Drive
Allentown, PA 18104-1759
Tel: 610-336-6680 Fax: 610-336-6678
Email: barrygoldin@earthlink.net

[HAC60722.1COMP]

EXHIBITS TO COMPLAINT

The documents bearing a "LH" Bates stamp were produced by Leisawitz Heller in discovery in the Predecessor Action and the documents bearing a "WILTON - NMC" Bates stamp were produced by North Mill in discovery in the Predecessor Action.

| Ex. | Document |
|---|---|
| | *Prior Decisions in the Predecessor Action recorded in Lancaster County* |
| 1. | April 7, 2016 Notice of Entry by the Prothonotary of Lancaster County of the Order and Judgment filed April 6, 2016 of the U.S. District Court for the Eastern District of Pennsylvania for plaintiff creditor Artesanias for $920,645.38 against debtor Wilton Armetale, Inc. ("Wilton") in the action entitled *Artesanias Hacienda Real S.A. de C.V. v. Wilton Armetale, Inc. and Ivan Jeffery*, Case No. 5:15-cv-06350- EGS (the "Predecessor Action") |
| 2. | May 2, 2016 Receipt by the Prothonotary of Lancaster Count of the Order and Judgment filed April 29, 2016 for plaintiff creditor Artesanias for $923,457.87 against debtor Ivan Jeffery ("Jeffery") in the Predecessor Action |
| | *March 2015 "As Is" Appraisal of the Wilton Mt. Joy Real Estate* |
| 3. | March 13, 2015 letter to North Mill Capital ("North Mill") of Walters Appraisal Services certifying that "the 'As Is' Market Value of the fee simple interest in the [Wilton Armetale Mt. Joy] property in 'as is' condition, as of March 4, 2015 is $825,000" and December 18, 2015 North Mill email that the appraiser and the broker both confirm "price should have held up since his $895M appraisal" |
| | *Documents Relating to the Ivan Jeffery Participation Agreement in Wilton's Mt. Joy Real Estate and as to the other Wilton Collateral* |
| 4. | Junior Participation Agreement dated April 20, 2015 between Jeffery and North Mill and Non-Negotiable Participation Certificate certifying Jeffery's acquisition of a participating interest in the principal amount of $250,000 in the financing transaction made by North Mill to Wilton |
| 5. | Loan and Security Agreement dated April 20, 2015 between Wilton and North Mill |
| 6. | Wilton financial statements as of April 30, 2015 |
| 7. | September 29, 2015 letter from Eden Bucher, Esq. of Leisawitz Heller law firm to TWC Transfer, Inc. re Wilton |
| 8. | Plan to Liquidate Wilton during the four month period from September through December 2015 |
| 9. | December 10, 2015 Leisawitz Heller conflict letter to Wilton and to Jeffery (Leisawitz Heller produced no such letter counter-signed by Wilton or to Jeffery) |

10. Wilton Financial Statements as of December 31, 2015

11. January 6, 2016 email chain to North Mill confirming pendency of lawsuits against Wilton by Hacienda Real and by Expressive Inks

12. January 28, 2016 Memorandum to File from Thomas G. Siska of North Mill re sale of Wilton, referencing Jeffery $250,000 participation interest in North Mill loan to Wilton

13. February 4, 2016 email chain between North Mill and Wilton as to "Wilton 8 Week Liquidation budget Summary and Expense Detail"

14. February 5, 2016 email from Leisawitz Heller to Strategic Resources re sale of Wilton non-real estate assets to Vagabound House for $1,250,000 to $1,300,000

15. February 10, 2016 email from Betty Hernandez of North Mill re offers of two other bidders for Wilton non-real estate assets "now in the $1,250,000 range"

16. February 8, 2016 email from Betty Hernandez of North Mill as to her call "to Gordon Brothers regarding the possible liquidation of the inventory and trademarks/name for Wilton" and February 10 & 12, 2016 email chain ending with February 12, 12016 Gordon Brothers expression of interest addressed to North Mill to purchase the Wilton non-real estate assets for between $700,000 and $775,000

17. February 17, 2016 email chain ending with February 17, 2016 3:03 p.m. email from Leisawitz Heller to North Mill that Gordon Brothers:

    "understands Wilton's request for a higher price needed for all of the assets. I told him [Gordon Brothers] the offer undervalues the IP and brand. He seems very interested in capturing all of the IP and brand."

18. February 17, 2016 North Mill email computing that Jeffery would collect "$134,000 in exchange for his cooperation" with North Mill

19. February 24, 2016 email chain between North Mill and Leisawitz Heller as to North Mill payment of Leisawitz Heller legal fees and North Mill distribution to Jeffery of a portion of net real estate proceeds

20. March 1, 2016 email from Leisawitz Heller to North Mill and attached First Amendment to Participation Agreement between Jeffery and North Mill to be "signed contemporaneous with the Gordon Brothers documents"

21. March 2, 2016 email chain re North Mill payment of Leisawitz Heller fees, and re Participation Agreement with Jeffery

22. March 2, 2016 4:51 PM Leisawitz Heller email to North Mill counsel re revised Participation Agreement, and stating Jeffery's consent is sought by North Mill:

> "to allow the assets to be sold to Gordon Bros. for the price of $725,000 (which amount Mr. Jeffery believes is significantly less than what the collection of the AR's and sale of inventory would bring" and "there ha[s] to be some upside for" Jeffery"

23. March 4, 2016 email from Leisawitz Heller to North Mill counsel re, and attached, revision of Participation Agreement

24. March 4, 2016 letter agreement between Wilton and North Mill for payment of proceeds of asset sale by the purchaser Gordon Brothers directly to North Mill

25. Consent of Sole Shareholder and Sole Director of Wilton dated as of March 7, 2016, signed by Jeffery as sole shareholder and sole director of Wilton

26. First Amendment to Junior Participation Agreement dated March 7, 2016 signed by Jeffery and by North Mill

27. March 7, 2016 wire transfer confirmation for wire transfer of $725,000 by Gordon Brothers directly to the account of North Mill; Leisawitz Heller Closing Binder for private sale of Wilton non-real estate assets to Gordon Brothers; and accompanying signed Asset Purchase Agreement

28. March 8, 2016 email from Leisawith Heller to North Mill and attached Leisawitz Heller invoice for $10,500 for payment by North Mill, and March 9, 2016 email confirming Leisawitz Heller's receipt of that $10,500 paid by North Mill

29. March 22, 2016 letter from Leisawitz Heller to counsel for creditor Bridal Guide Magazine confirming that Wilton "has ceased operating" and "is insolvent and will be unable to make a distribution to any unsecured creditors"

30. March 31, 2016 letter from Leisawitz Heller to North Mill capital as to pending litigation by Artesanias and other creditors against Wilton

31. May 3, 2016 email from Leisawitz Heller to North Mill counsel that Leisawitz Heller will accept service on behalf of Wilton and Jeffery of Confession of Judgment complaints and other pleadings by North Mill and that "both Wilton and Mr. Jeffery will cooperate to expedite the foreclosure process"

32. May 4, 2016 email from Leisawitz Heller to North Mill counsel that "Wilton will not oppose" North Mill motion to appoint a receiver for the Mt. Joy Real Estate

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ARTESANIAS HACIENDA REAL S.A. de C.V., Plaintiff | Case No. ___-CV-__________ |
| -against- | **COMPLAINT** |
| NORTH MILL CAPITAL, LLC and LEISAWITZ HELLER, Defendants | |

BARRY L. GOLDIN, ESQ. (PA #58692)
*Attorney for Plaintiff Artesanias Hacienda Real, S.A. de C.V.*
3744 Barrington Drive
Allentown, PA 18104-1759
Tel: 610-336-6680
Fax: 610-336-6678
Email: barrygoldin@earthlink.net