# EXHIBIT 41

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re: | ) Chapter 7 ) ) |
| WILTON ARMETALE, INC., a/k/a WAPITA, INC. | ) Case No. 16-16779 (REF) ) ) |
| Debtor. | ) ) ) |

### SETTLEMENT AGREEMENT BY AND BETWEEN THE CHAPTER 7 TRUSTEE, AND NORTH MILL CAPITAL LLC

This settlement agreement and compromise (the "Agreement") is entered into by and between David A. Eisenberg, as Chapter 7 Trustee (the "Trustee") for the estate of WILTON ARMETALE, INC. a/k/a WAPITA, INC. ("Debtor") and North Mill Capital LLC (North Mill) (collectively, referred to herein as the "Parties") subject to Bankruptcy Court approval. In furtherance of the Agreement, the Parties set forth as follows:

### BACKGROUND

1. On September 26, 2016 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

2. On September 27, 2016, David A. Eisenberg was appointed the Chapter 7 Trustee by the United States Trustee.

3. The Debtor owns commercial real estate located at 903-905 Square Street, Mt. Joy, Pennsylvania (the "**Real Estate**").

4. According to Debtor's Schedules, secured creditors in the Real Estate include North Mill Capital LLC ($1,110,361.48) (North Mill) and Artesanias Hacienda Real S.A. de C.V. ($920,658.17) ("AHR") - as of the Filing Date. The Debtor lists the North Mill claim as disputed.

5. North Mill entered into a Loan and Security Agreement with the Debtor dated April 20, 2015 pursuant to which North Mill obtained mortgages for $4,000,000 and for $400,000 on the debtor's Real Estate (the "**$4,000,000 Mortgage**" and the "**$400,000 Mortgage**"; together, the "**NMC Mortgages**").

6. The $400,000 Mortgage was timely recorded on April 22, 2015, and the $4,000,000 Mortgage was timely recorded on April 28, 2015.

7. North Mill has a priority secured interest in the Debtor's Real Estate by virtue of the NMC Mortgages.

8. North Mill obtained judgments against the Debtor on the notes secured by the $400,000 Mortgage and the $4,000,000 Mortgage in the Court of Common Pleas of Lancaster County, Pennsylvania on April 6, 2016 in the amounts of $405,000 and $606,361.48, respectively (the "**North Mill Judgments**").

9. North Mill's liens on the Real Estate relate back, for priority purposes, to the recording of the $405,000 Mortgage and the $4,000,000 Mortgage.

10. The Debtor's schedules also list indebtedness to the Donegal School District for real estate taxes totaling $14,875.21; lists no other secured creditors in the Real Estate; identifies no priority unsecured debt and $1,379,226.12 in unsecured debt.

### MUTUAL DESIRE FOR SALE

11. Upon information provided by the Debtor, North Mill and AHR and after investigation, the Trustee believes that the highest and best price will be obtained for the Debtor's Real Estate only if the commercial building is promptly sold.

12. The Trustee's investigation, including information from Debtor, suggests that the lien on the Debtor's Real Estate exceeds the value of the Real Estate but a meaningful

distribution may result to claims of unsecured creditors, including full payment of administrative claims, upon approval of the carve-out agreement and effectuating the prompt sale of the Real Estate.

13. The Real Estate was briefly marketed for sale pre-bankruptcy and a potential purchaser communicated to the Trustee a desire to purchase the Debtor's Real Estate for the sum of $800,000.00.

14. In Schedule A, the Debtor lists the value of the Real Estate to be $895,000.00.

15. The Trustee believes that a prompt sale of the Debtor's Real Estate is in the best interest of all creditors and of the Bankruptcy estate. The Trustee has requested court authority to sell the Real Estate subject to higher and better offers in an effort to provide the greatest possible net return to the Debtor's Bankruptcy estate and creditors.

16. To effectuate the Trustee's marketing and sales plan, the Trustee has discussed the idea and bankruptcy ramifications with various professionals, constituents and potential asset buyers.

17. North Mill claims that the Debtor's indebtedness is secured by, among other things, liens on the Real Estate (the "Collateral").

18. The Trustee also maintains that, to the extent any party holds a valid security interest in the debtor's assets, the Trustee has authority pursuant to §506(c) to pay out of any recovery from any sale or proceeds, the reasonable, necessary costs and expenses of preserving, or disposing of the assets.

## AGREED COMPROMISE

19. The Parties agree that the Trustee is uniquely situated to efficiently administer the assets of the Debtor's Bankruptcy estate.

20.  The Trustee has requested, and North Mill has agreed, to allow the Real Estate to be exposed to a prompt sale process in Bankruptcy Court.

21.  Specifically, North Mill consents to the Trustee's efforts to promptly move forward with a bankruptcy court sale of the Real Estate subject to higher and better offers.

22.  In furtherance of the amicable administration of this case for the benefit of all creditors—and as a result of extensive negotiations—the Parties have agreed to the terms and conditions of this Agreement, which provides funding for the efficient liquidation of the assets and conclusion of this case.

23.  After review of the assets of this estate and the status of liens perfected by North Mill and AHR, the Trustee believes that a settlement based upon the terms set forth herein, is in the best interests of the estate and all the creditors.

**THEREFORE, IT IS HEREBY STIPULATED AND AGREED BY AND BETWEEN THE PARTIES AS FOLLOWS:**

1.  **Liens and perfection:** AHR disputes North Mill's secured claims in the Real Estate to the extent of total amounts due and priorities, and issue has been joined in the dispute between the two parties in a federal lawsuit pending in the United States District Court for the Eastern District of Pennsylvania, in which action AHR seeks monetary damages, AHR does not dispute the mortgage, recordation and judgments obtained by North Mill. Rather AHR allegedly disputes the sums due and subordination of the North Mill claims. No issue has been raised with respect to the priority dispute in this bankruptcy case.

2.  **Authority to pay down the Secured Creditor:** Unless the dispute between North Mill and AHR is resolved adversely to North Mill prior to closing, and AHR successfully challenges North Mill's first priority secured interest in this Court, North Mill shall receive

proceeds of the sale as the first priority secured creditor ahead of any interest of AHR up to the sum of $520,000 as agreed herein with the Trustee. North Mill agrees that upon its actual receipt of $520,000 from the proceeds of the Real Estate, North Mill accepts that amount in full and final satisfaction of all of its claims in this bankruptcy case.

3. **Subordination / Carve-out of Proceeds:** North Mill agrees to subordinate its secured claims to real estate taxes, valid municipal claims, transfer taxes, closing costs and any resulting capital gain tax from the proceeds of its validly-perfected security interests in the collateral (the "Carve-Out") and to contribute and transfer to the Trustee for the benefit of the estate, the balance of its interest in the proceeds of the Collateral in excess of a $520,000 distribution. To the extent that an amount achieved on the sale of the Collateral is less than $520,000.00, North Mill will receive such amount received subject to the payment of the aforesaid taxes.

4. **Property of the Estate:** Upon the Bankruptcy Court's approval of this Agreement, North Mill shall contribute from its secured position in the collateral of the Debtor, all proceeds in excess of the $520,000 payment contemplated in this Agreement solely for the benefit of, and distribution to, allowed chapter 7 claims of this estate, in accordance with the terms of this Agreement and the priorities set forth in the Bankruptcy Code. North Mill waives any further claim against the Estate, whether administrative, priority or general unsecured.

5. **Surcharge of Collateral:** The Parties stipulate and agree, subject to the Bankruptcy Court's approval, that North Mill may distribute the proceeds of its collateral as it wishes in exchange for, among other things, surcharge of collateral. Accordingly, all payments made pursuant to the terms of this Agreement shall be characterized as, and deemed to be, a

consensual surcharge against North Mill's collateral subject to these terms. No further surcharge shall be sought or allowed.

6. **Sale:** The Trustee shall continue to promptly market and sell the Real Estate and shall prosecute the motion already filed with the Bankruptcy Court to establish a sale of the Real Estate pursuant to section 363 of the Bankruptcy Code. North Mill acknowledges and consents to the sale of the Real Estate in accordance with this Agreement and subject to Bankruptcy Court approval including higher and/or better offers.

7. **Forbearance:** North Mill agrees to forebear from exercising any further rights under bankruptcy and non-bankruptcy law with respect to the Collateral.

8. **Credit Bid:** Other than the foregoing, North Mill specifically waives the right and authority to credit bid all or any part of its secured claim at any sale of the Collateral.

9. **Distribution of the Sale Proceeds:** Upon the closing of the Bankruptcy Court approved sale of the Real Estate to a third party, the Trustee shall, pending further order of the court, retain the proceeds of the sale after deduction only for the Carve-Out, the real estate taxes, valid municipal liens, transfer taxes, closing costs and $520,000 paid to North Mill. North Mill is to receive its $520,000 in proceeds directly out of closing a sale of the Real Estate.

10. **Release.** In further consideration of the benefits obtained through this Agreement, the Trustee releases and discharges North Mill, its successors, assigns and insurers, and their respective agents, servants and employees, from any or all causes of action, claims and demand of whatsoever kind on account of all known, and unknown injuries, losses and damages allegedly sustained by the Debtor and the Debtor's bankruptcy estate.

11. **Other Secured Creditors:** North Mill is aware of and acknowledges a similar agreement reached between the Trustee and AHR. The Trustee will exercise his best efforts to

obtain the agreement of other secured creditors, if any, to agree to administration of Collateral subject to their liens on substantially the same terms and conditions as those agreed between the Trustee, North Mill and AHR.

12. **Abandonment of Assets:** The Trustee reserves the right, in his sole discretion and subject to Bankruptcy Court approval, to abandon, or choose not to administer, any property or asset of these estates. In the event the Trustee chooses not to administer any of the Collateral, North Mill shall have the right to seek relief from the automatic stay to enforce any lien on such property.

13. **Fiduciary Review:** The Trustee intends that the transactions described in this Agreement shall result in a meaningful recovery (as determined in the business judgment of the Trustee) to allowed claims.

14. **Authority to Execute:** The Parties each represent that they have full actual and apparent authority to execute this Agreement and bind the relative Party.

15. **Bankruptcy Court Approval:** This Agreement shall remain subject to approval by the United States Bankruptcy Court for the Eastern District of Pennsylvania. The Trustee will promptly file a motion to seek such approval.

16. **Effect of Termination:** In the event of a termination of this Agreement by the Trustee, or in the event that Bankruptcy Court approval of this Agreement cannot be obtained by final and non-appealable order, the Parties will be returned to their respective status prior to the execution of this Agreement, with all rights and remedies available at that time.

17. **Integration Clause:** All the foregoing including the Background, are incorporated herein by reference, are agreed to by the parties hereto, and form part of this

Agreement. This Agreement represents the entire agreement by and between the Parties, and may only be modified by a subsequent writing executed by each of the Parties.

18. **Execution of Counterparts:** This Agreement may be executed in counterparts, which collectively, shall represent one validly-executed agreement. Any signature delivered by facsimile or electronic mail shall be deemed to be an original signature hereto.

19. **Choice of Law:** This Agreement shall be governed by and in accordance with the laws of the Commonwealth of Pennsylvania without consideration to interests of conflicts of law.

Dated: December 22, 2016

_____
Gary Seitz as Agent and Attorney in Fact for
David A. Eisenberg, as Chapter 7 Trustee (the
"Trustee") for the estate of WILTON ARMETALE,
INC. a/k/a WAPITA, INC. pursuant to telephonic authority

North Mill Capital LLC
_____
By: JEFFREY K GOLDRICK
Title: Pres/CEO