IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ARTESANIAS HACIENDA REAL S.A. DE C.V., | : | CIVIL ACTION |
|---|---|---|
| Plaintiff, | : | NO. 16-4197 |
| v. | : | |
| NORTH MILL CAPITAL LLC, et al., | : | |
| Defendants. | : | |

## **MEMORADUM OPINION**

This matter has been referred to this Court by the Honorable Edward G. Smith for discovery purposes. Presently before the Court are Plaintiff's Letter Request to Compel Compliance with Document Discovery Requests Against Defendant Leisawitz Heller (Doc. No. 67) ("Mot."), Defendant Leisawitz Heller's opposition thereto (Doc. No. 74) ("Opp."), and Plaintiff's reply in support thereof (Doc. No. 75) ("Reply"). For the reasons discussed below, the Motion will be granted in part and denied in part without prejudice.

This action involves the bankruptcy of Wilton Armetale, Inc. ("Wilton") and a transaction that it entered into prior to the bankruptcy. At a time when it allegedly was insolvent, Wilton sold certain non-real estate assets to a party of Defendant North Mill Capital LLC's ("NMC") choosing allegedly for less than fair market value, with all the proceeds paid to NMC. First Am. Compl. (Doc. No. 38 ¶ 4). This transaction allegedly left Wilton with insufficient funds to protect or maintain certain valuable real property (the "Mount Joy Property"), which caused that property to go into foreclosure. Id. NMC, a Wilton creditor, then allegedly purchased the Mount Joy Property in the foreclosure for less than fair market value and promptly resold it for a profit. Id. Prior to the sale of the Mount Joy Property, Wilton allegedly received

another offer to purchase that property for a significantly higher price.  Id.  Third party Irvin Jeffrey ("Jeffrey") was the sole director and officer of Wilton.  Id. ¶ 1.  Before he would consent to these transactions, Jeffrey allegedly required NMC to agree to pay to him personally a 20% interest in the profits obtained from the resale of the Mount Joy Property, and Wilton allegedly agreed to do so.  Id. ¶ 4.  Defendant law firm Leisawitz Heller represented both Jeffrey, personally, and Wilton in connection with these transactions.

Plaintiff, another creditor of Wilton, has raised claims against Defendants of aiding and abetting a breach of fiduciary duty owed to it as a creditor of an insolvent corporation, conspiracy to breach fiduciary duties owed to it as a creditor of an insolvent corporation, conspiracy to commit a fraudulent transfer, and conspiracy to engage in commercially unreasonable disposition of a debtor's assets.  Id. Counts I-VI.

In the course of Wilton's bankruptcy proceeding, Jeffrey assigned all the outstanding shares of Wilton to a company affiliated with Plaintiff, Mega Living, S. de. R.L. de C.V. ("Mega").  Mega appointed Ernesto del Campo Romero ("Romero") the sole director and officer of Wilton.  Mot. Ex. 1.  By letter of May 12, 2016, Romero advised Leisawitz Heller of the transaction and of his appointment and directed it to "deliver to [Plaintiff's Counsel] **all** records and other documents with respect to Wilton."  Id. (emphasis in original).  The present dispute centers on discovery requests issued by Plaintiff to Leisawitz Heller, seeking all documents and records with respect to Wilton and the law firm's representation of Wilton.  Mot. at 1.  In response, Leisawitz Heller has withheld a large number of documents based on a claim of attorney-client privilege.  Opp. Ex. C (privilege log).  Leisawitz Heller contends that the documents are privileged because they represent communications between it and its client, Jeffrey.  Opp. at 2.  In response, Plaintiff contends that Wilton paid for Leisawitz Heller's

representation provided in connection with the sale of Wilton's assets and the Mount Joy Property with the accompanying 20% payment to Jeffrey.  Reply at 1.  It argues that, "when an attorney provides legal services to both a corporation and to a corporate officer personally, the corporation's privilege prevails."  Id. at 2 (citing Transcon. Refrigerated Lines, Inc. v. New Prime, Inc., No. 1:13-CV-2163, 2014 WL 2471936, at *7 (M.D. Pa. June 3, 2014)).  Plaintiff asserts that any privilege regarding the communications belongs to Wilton and that Wilton's sole officer and director, Romero, has instructed Leisawitz Heller to provide the documents to Plaintiff's counsel.  It also argues that the allegedly privileged documents are subject to the crime-fraud exception to the attorney-client privilege.  Id.

It is well-settled that "any privilege that exists as to a corporate officer's role and functions within a corporation belongs to the corporation and not the officer."  In re Bevill, Bressler & Schulman Asset Mgmt. Corp., 805 F.2d 120, 124 (3d Cir. 1986).  Former corporate officers "may not assert [attorney-client] privilege over the wishes of current managers, even as to statements that the[y] might have made to counsel concerning matters within the scope of their corporate duties."  Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985).  This same rule applies even when an attorney initially represents the former official individually, but then takes on duties impacting the corporation's interests.  Transcon., 2014 WL 2471936, at *5-7.  Thus, in Transcontinental, a law firm that served as personal counsel for the president and sole shareholder of a corporation conducted the negotiations for and drafting of transactions in which the corporation allegedly fraudulently transferred a substantial portion of the corporate assets to him.  Id. at *2-3.  In the corporation's subsequent adversary bankruptcy proceeding, the new party controlling the corporation (there, a bankruptcy trustee) instructed the law firm to provide him with documents relating to the transactions at issue.  Id. at *3.  The law

firm refused, asserting that it solely represented the individual officer/shareholder and not the corporation. Id. The court held that the fact that the law firm negotiated and drafted the agreements for the transactions and that it was paid for doing so by the corporation "resulted in a limited representation of [the corporation], by implication, as to the asset purchase agreement transaction." Id. at *5-7. As a result of the joint representation of the officer/shareholder and the corporation, the officer/shareholder did not have the power to prevent the corporation from waiving the privilege for all otherwise privileged communications that related to the corporation or its assets. Id. at *7 (citing In re Bevill, 805 F.2d at 124). Accordingly, the court held that neither the law firm nor the officer/shareholder could assert privilege against the corporation "with respect to any communication that either impacted or implicated [the corporation's] corporate interests." Id. The officer/shareholder could assert the attorney-client privilege only to the extent that his communications with the law firm involved purely personal interests as to matters not related to his role as an officer of the corporation. Id. (citing In re Bevill, 805 F.2d at 125).

The facts in Transcontinental are identical in material respects to the facts presented here, and the case accurately sets out the law governing privilege assertions by corporations and their officers. The present controlling officer of Wilton, Romero, has waived the privilege as to all documents in Leisawitz Heller's possession relating to Wilton or its interests in connection with a lawsuit in which Plaintiff asserts that the past officer/director fraudulently transferred corporate assets to his own and Defendant NMC's benefit. Leisawitz Heller has not contested that it drafted the documents relating to the transactions described above or that it was paid by Wilton to do so. The attorney-client privilege for all documents reflecting privileged communications between that law firm and Jeffrey belongs to Wilton, and Jeffrey cannot overcome Wilton's

4

waiver of that privilege. Therefore, Leisawitz Heller must produce to Plaintiff all documents that it previously withheld on a claim of privilege that "either impacted or implicated [the corporation's] corporate interests." Id. This includes, without limitation, any documents reflecting offers to purchase or expressions of interest in purchasing Wilton assets, communications relating to the agreement to transfer non-real estate assets, communications regarding any funds or compensation in any form to be provided to Jeffrey, directly or indirectly, in connection with the sale and/or resale of Wilton assets or with his approval of such transactions.[1]

However, although Leisawitz Heller's opposition provides nothing more than a blanket assertion that it only represented Jeffrey personally, the Court recognizes the possibility that it may have represented Jeffrey with respect to some matters wholly unrelated to Wilton. As to any such representation, Jeffrey retains the ability to assert the attorney-client privilege. Leisawitz Heller's privilege log appears to include some such documents. See, e.g., Opp. Ex. C, at 1 (documents described as "personal financial statement" and "life insurance"). It is not possible for this Court to distinguish based solely on the limited description of the documents in the privilege log which of the numerous documents listed remain privileged under the rules articulated herein. Accordingly, the parties shall proceed in the manner described in the accompanying Order. If, upon completion of the steps directed in that Order, the parties remain

---

[1] Leisawitz Heller's Opposition does not provide sufficient information to permit the Court to make a ruling regarding Plaintiff's assertion of the crime-fraud exception to the attorney-client privilege at this time. Plaintiff's argument for that assertion also likely will benefit from the additional discovery ordered here. Moreover, in light of the directives addressed in the Order accompanying this Memorandum Opinion, it may not be necessary to reach the crime-fraud issue to ensure that all non-privileged documents are produced. Thus, the Court will not determine the applicability of the crime-fraud exception at this time. If necessary, after the directives set out in the accompanying Order have been completed, Plaintiff may again raise the issue with respect to any documents that may remain in dispute.

in dispute regarding whether certain documents must be produced after they have met and conferred regarding that dispute, they may raise any remaining disputes with the Court.[2]

Dated: June 2, 2017

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE

---

[2] An exchange of letters may be a useful part of an effort to meet and confer to resolve discovery disputes, but it is not itself an adequate effort. Before involving the Court in any further discovery disputes, in addition to any exchange of letters, the parties shall communicate, either in person or telephonically, and attempt in good faith to narrow the issues in dispute.